Powell *vs.* Quinn *et al.*

JOHN F. POWELL, plaintiff in error, *vs.* CLARIDA QUINN *et al.*, defendants in error.

49 523
130 360

1. Courts of equity will not interfere with the regular course of an administration, by appointing a receiver to take the assets of the estate out of the hands of the administrator, unless the danger be imminent, and the charges in the bill be positive and specific.

2. The process of injunction ought not to be used to restrain one from selling property to which he has apparent title, except upon positive charges and strong grounds to believe such restraint necessary to prevent wrong.

Equity. Injunction. Administrators. Receiver. Title. Before Judge PATE. Dooly county. At Chambers. January 25th 1873.

Clarida Quinn and Elias Godwin, as next friend of Charlie Quinn, an infant, filed their bill against John F. Powell, making substantially the following case:

Charles M. Quinn, the father of Charlie Quinn, was the son of Clarida Quinn, and brother-in-law of Elias Godwin, Godwin having married his sister. Charles M. Quinn married Victoria Chastain on the 14th day of February, 1871, and died intestate on the 18th day of October, 1871. His widow also died intestate, on the 4th of September, 1872, leaving as her only heir and the only heir of her deceased husband, the infant child Charlie, who was born subsequent to the death of his father. The complainants, Mrs. Clarida Quinn, who is the grandmother of the infant Charlie, and Elias Godwin, who is, by marriage, his uncle, have the custody of said infant. Charles M. died possessed of valuable property, consisting of personalty, choses in action, accounts and notes due to him for medical services. Victoria died possessed of valuable property, both real and personal. Victoria, prior to her marriage, was an orphan, and the ward of one McKenzie, who, while guardian of Victoria, and before her marriage, died in possession of her estate, and at his death said estate passed into the hands of his administrator, William Hooks. Complainants have no means of ascertaining the value of Victoria's estate while in possession of McKen-

zie, and which passed into the hands of his administrator. Prior to the marriage of Victoria, the defendant, John F. Powell, her half-brother, was appointed her guardian, and that to him her whole estate was turned over by Hooks, the administrator of McKenzie, her former guardian.

The defendant, under a pretended settlement with his ward, after the death of her husband, obtained a dismissal from his guardianship from the Ordinary of Dooly county. While guardian of Victoria, he purchased with her money the lot of land on which he now resides, for $1,225 00, and took a deed thereto in his own name. Defendant had great influence over his ward and could control her by persuasion and entreaty, or by threats and intimidation. In the pretended settlement with his ward, he made and delivered to her a deed to two hundred acres of poor, pine land, almost worthless. Upon the death of Charles M., defendant took possession of his entire estate, and upon the death of Victoria, he took possession of her entire estate, and now has it in his possession. Defendant obtained the guardianship of Victoria by misrepresentations, and for his own advantage. His failure to settle with her husband was illegal and fraudulent, and for the purpose of obtaining advantage of his ward. His pretended settlement with his ward, while she was subject to his influence and control and without full knowledge of her rights, was wrongful, fraudulent, illegal and inequitable. He, as such guardian, has never made a full and complete settlement, and the order of the Ordinary of Dooly county dismissing him from his guardianship was obtained by fraud and misrepresentation, and is, therefore, void. The purchase of the lot of land from Waters by defendant with the money of his ward, and taking the deed to said lot in his own name, was a fraudulent conversion of his ward's estate. The defendant, before becoming guardian of Victoria, was worth but little, almost, if not entirely, insolvent. Soon after the purchase of the lot of land from Waters, he moved thereon, and now resides on it. Defendant, having absolute control over his ward, compelled her to leave her own home and remove to his, im-

Powell *vs.* Quinn *et al.*

mediately after the death of her husband. Defendant, in his settlement with his ward, by giving to her a lot of land, poor and almost worthless, in lieu of the lot of land purchased with her funds, was guilty of bad faith, and violated his trust as guardian. The defendant, immediately after the death of Charles M., having taken possession of his estate, proceeded to collect various accounts due said Charles M. for medical services, and has never, in good faith, accounted therefor.

Having converted the estate of Charles M. to his own use, defendant induced Victoria to take out letters of administration upon the estate of her deceased husband, Charles M. for the purpose of obscuring his own illegal and wrongful acts. He took possession of Victoria's estate upon her death, without right or authority of law to do so. He has never applied for letters of administration, but is daily using said estate for his own benefit, in fraud of the rights of the infant Charlie, and is under no bond safely to keep and account therefor. He is proceeding to obtain guardianship of said infant Charlie, and is not competent for such appoinment, because he is indebted to said child as herein before stated, and because he is greatly involved, having but little property besides the lot on which he resides, purchased as above set forth. He is daily using for his own benefit the estate of said infant, and wasting the same; he is wholly unable to respond for any amount, in law or equity, that might be recovered against him, and the whole of said estate will be lost to said infant unless the said defendant is restrained by the Court.

Complainants are apprehensive that the defendant, after he has information of this suit, will sell and convey, or encumber the lot on which he resides, and the other property of said infant's estate, unless restrained by the Court. Complainants pray,

1st. An injunction restraining defendant from selling the lot on which he resides.

2d. The appointment of a receiver to take charge of all the property belonging to the estate of Charles M. and Victoria Quinn.

3d. That defendant may be enjoined from further interference with said estate, and that all legal proceedings concerning said estate be suspended till the further order of the Court.

4th. That if defendant fails or refuses to deliver to the receiver all the property of said estate, they pray an order directing the sheriff to seize said property and turn over the same to the receiver.

5th. The appointment of a guardian *ad litem* for the infant Charlie.

6th. That defendant may be compelled to make a full and accurate settlement with said infant child, and that the order of the Ordinary of Dooly county, dismissing defendant from his guardianship of Victoria, be set aside.

7th. That the land and other property, bought with the money of defendant's ward, Victoria, be decreed the property of her heir, the said infant.

The defendant answered substantially as follows: Denies all charges of fraud and mismanagement contained in the bill; admits that said Charles M. had some property at the time of his death, and that his widow administered upon his estate, and says that at her instance and request, he, being her half brother, acted as her agent, and assisted her in the management of said estate, and that, as such agent, he acted faithfully and turned over to her everything that came into his hands; states that one of the complainants, Clarida Quinn, and her daughters, except Mrs. Sutton, treated Victoria with cruel neglect and unkindness from the time of her marriage to Charles M.; that upon the death of Charles M., Clarida Quinn, who, till then, had lived with Charles M., had the body buried without consulting Victoria as to the place of burial; and that on the next day thereafter, during the absence of Victoria, and without her consent, she procured J. R. Holmes, Solomon Zant and Edmond McLendon to go to their homes and search and examine the books, accounts, etc., of said Charles M. Quinn; that at this time Victoria was in delicate health, and soon thereafter gave birth to the infant Charlie, and

that she was greatly grieved and shocked by the cruel treatment of the said Clarida, who entirely ignored her rights as the wife and widow of Charles M.; that Charles M., in his lifetime and Mrs. Clarida together, had a farm, and that after his death said Clarida denied to Victoria, who had become administratrix of Charles M's estate, that he, Charles M. ever had any interest in said farm; that the said Clarida had other property in her possession which belonged to Charles M., as shown by tax returns, and that she took posssession of it wrongfully upon his death; that Victoria, unable longer to submit to the cruel and harsh treatment of Clarida, left her house and removed to the home of defendant; that her health continued very bad for four or five months thereafter until the birth of the infant Charlie, and afterwards till her death; that during all this time the said Clarida, though living only one and a half miles distant, never went to see Victoria or the child, and did not even send to her a message; that about five months after the birth of her child, Victoria removed to Spalding, Macon county, where she had purchased a house and lot, where she died on September 4th, 1872; defendant immediately removed the child and all movable property on the place to his house, where said property has been safely kept and is now held; afterwards the said Clarida applied to the Ordinary for letters of guardianship for the child, which were refused, and letters granted to defendant, at the November term, 1872, together with letters of administration on the estate of the said Victoria. Defendant says Victoria was left an orphan when only five years old, and that she was raised by him as his own child, and he denies, in any manner, ever having defrauded her, and that it does not become complainant Clarida, to prefer, in behalf of said orphan, charges of fraud against him; she was unrelentingly cruel towards Victoria during her lingering illness and until her untimely death, and neglected her orphan until its property made it an object of interest to her; denies that the land on which he lives was bought with the effects of the said Victoria; he bought the land from J. D. Waters, and gave for it certain notes on John A. Ingram, and

a buggy, which were accepted by said Waters in full payment for said land; denies that the land turned over by him to Victoria is almost worthless, but says it is fully worth all the balance due by him, at that time, to said Victoria; states that he paid for it about $2,500 00, and that his said settlement with her was made in perfect good faith, and that said Victoria was not induced to make it by any improper influence; says he has collected only $5 00 of the estate of Charles M. since the death of Victoria; he denies that he has wasted or converted to his own use one cent of Victoria's estate before or since her death.

Conflicting affidavits were read as to whether the land on which defendant was residing was purchased with his own money, or with that of his ward, and also, as to the amount of the accounts due to the estate of Charles M. Quinn, collected by the defendant.

Affidavits were introduced showing the value of the land turned over to Victoria Quinn by the defendant, in settlement of his liability as her guardian, to be $2,000 00; and also, unkind treatment on the part of Clarida Quinn and her daughters, to the said Victoria.

The Chancellor granted the injunction as prayed for, and appointed a receiver. To which judgment the defendant excepted.

C. T. GOODE; J. L. TOOLE, by Z. D. HARRISON, for plaintiff in error.

The plaintiff in error (defendant in bill) being the administrator, with good bond, and no danger to the estate or parties in interest, appearing, the Court should not appoint a receiver. A receiver is only appointed against a party in possession under a legal title, in cases of fraud *clearly proved* and of *imminent danger,* if the intermediate possession should not be taken under the care of the Court: See Edwards on Receivers, 19 and 20; 19 Vesey, 50; 2 Young & Collins, 351; 13 Vesey, 266; 2 Vesey, Sr., 360; 16 Vesey, 70; 3 Daniel's Chancery Practice, 401, 2, 3, 4, 6, 7, 416, 422; 8 Paige's Re-

ports, 475; 1 Jack. & Wal., 657; 10 Georgia, 288, Jones *vs.* Dougherty; 23 *Ibid.*, 31, Johns *vs.* Johns *et al.*

POE, HALL & POE; S. R. GOODE, for defendant.

McCAY, Judge.

1. It ought to be a very strong case, indeed, to justify a Chancellor in appointing a receiver and taking the assets of an estate out of the hands of an administrator duly appointed by the Court of Ordinary. The Ordinary has constitutional jurisdiction over the subject matter, and special reasons should appear why that jurisdiction does not answer the ends of justice. The Ordinary may discharge an administrator and appoint another; he may require new security, and he may compel the delinquent administrator to account and deliver up the property as well as a Court of chancery can do it. There is no charge in this bill, so far as the assets of Mrs. Victoria Quinn's estate are concerned, that shows any immediate imminent danger of waste, or of any wrong which the Ordinary may not effectually grapple with and prevent. The charges in the bill are wanting in certainty, and it would be dangerous to use the extraordinary power of appointing a receiver on such allegations. Fraud is charged, and misrepresentation in obtaining the letters, but no specification is made, no facts detailed. This is entirely too loose and indefinite.

2. Nor do we see any necessity for the injunction against the defendant selling the land he lives on. It appears that he made a settlement with Mrs. Quinn during her life, and after her maturity. Not a word is said showing that settlement to be unfair, or that any concealment was made. Nothing is charged but that the defendant had great influence over his sister. Perhaps he had; but does this make out a case of an improper use of that influence? Why should there be any injunction? The filing and pendency of the bill will be a notice of *lis pendens*, and any purchaser of the land will take it subject to the decree. The evidence, too, is very strong that the land was, in fact, bought with defendant's own means,

and before he was appointed guardian of his sister or got any of her effects. This disposes of all the matters in the judgment complained of, except the appointment of a receiver to take possession of the assets of Dr. Quinn. We see no impropriety in that, although, perhaps, the Ordinary was the proper tribunal to see to that. But as the parties are in equity, we see no objection to gathering up those assets by a receiver. The infant has no estate that does not come from either its father or mother. That estate, so far as it comes from the mother, is protected by the administration bond. If that is not good, the Ordinary can make it so.

Judgment reversed.