REED, executor, *v.* AUBREY *et al.*

| 91 | 435 |
|----|-----|
| 110 | 530 |
| 91 | 435 |
| 116 | 32 |
| 91 | 435 |
| e117 | 780 |
| 91 | 435 |
| 124 | 722 |

1. If, pending a regular proceeding to foreclose a mortgage upon realty given by a testator, his executrix administers the mortgaged property by making a legal and valid sale thereof, this will bar the rendition of a judgment of foreclosure; but if the sale be either void or voidable, the same will be no bar. The mortgage creditor may elect not to ratify a voidable sale, and such election may be made, so far as the executrix is concerned, by continuing to prosecute his pending proceeding to foreclose the mortgage.

2. On what terms, and in what manner, the mortgagee in such case, after obtaining a judgment of foreclosure, may elect to set aside the sale as to the purchaser from the executrix, is not now in question, the purchaser not being a party before the court.

3. The same principle which renders an agent to sell land incompetent to purchase from himself, renders him incompetent to sell it to his wife. On the highest authority, the twain are one flesh.

4. Where the father of the agent's wife, contemplating a purchase on his own account for his daughter's benefit, bid off land offered at a cash sale conducted by her husband as agent for an executrix, but paid nothing and took no conveyance, no complete sale was effected. If thereupon, by his consent and the consent of his daughter and her husband, she was substituted as purchaser, and the terms of the sale were changed from a cash to a credit sale, or a sale partly on credit, this was not a binding administration of the property as against the mortgagee, but would be subject to ratification or repudiation by him according to his election.

March 27, 1893.  Argued at the last term.

Before Judge MILNER.   Bartow superior court.   July term, 1892.

A petition was brought to foreclose a mortgage made by William Aubrey and his wife.   William Aubrey had died; his wife was appointed his executrix, and letters testamentary issued to her on May 2, 1881.   The petition to foreclose was brought on August 3, 1882, and she pleaded at the trial that, in pursuance of her due application and the judgment of the court of ordinary, she sold the mortgaged property at executrix's sale on the

first Tuesday in December, 1883, to pay the debts of testator, for $2,100 which was duly paid to her; so that the lien of the mortgage was divested from the land and attached to the proceeds of the sale. The evidence shows that the executrix made to her son, G. H. Aubrey, a power of attorney authorizing him to advertise and sell for cash the land in question, and to make a deed to the purchaser. It was admitted that due and proper notice was given of the application of the executrix to the court of ordinary for leave to sell, that the leave was legally granted, and that the advertisement of sale was legal. In December, 1883, the land was sold by the sheriff, and was bid in by Smith, the father of G. H. Aubrey's wife, to whom, on February 14, 1884, a deed was made by the attorney in fact. The verdict was for the defendant; the plaintiff's motion for a new trial was overruled, and he excepted. For the other material facts see the decision.

J. B. Conyers and W. K. Moore, for plaintiff.

R. W. Murphey and T. W. Akin, for defendant.

Lumpkin, Justice.

1. An executrix has the right, in the due course of administration, to sell the property of her testator for the purpose of paying the debts of the estate, or carrying out the provisions of the will. Indeed, a sale of realty by an executrix will divest the lien of an existing judgment, unless the property is under levy at the time the sale is made. Accordingly, in *Newsom, adm'r*, v. *Carlton, adm'r*, this court ruled that a proceeding to forclose a mortgage upon realty given by an intestate would be defeated by an administrator's sale regularly made, and that the mortgage creditor would have to look to the proceeds of the sale in the administrator's hands. 59 *Ga.* 516. The foregoing rule is, of course, applicable to a sale made by an executrix which is law-

fully conducted and in all respects valid. The rule is different if the sale be either void or voidable. If the sale is absolutely void, of course the rights of no person could thereby be affected; and as the law gives to creditors the right, at their option, to either ratify or set aside a voidable sale, the same consequences would result if this option were exercised by choosing the latter alternative. We do not think it would be necessary, so far as the executrix is concerned, for the creditor seeking to foreclose his mortgage to institute a separate and distinct proceeding to have the sale declared void. His election may be made by continuing to prosecute his proceeding to foreclose the mortgage, and may be thus effectuated as well as by an equitable petition to have the sale vacated. Obtaining a judgment of foreclosure being entirely inconsistent with a ratification of the sale, there could be no misunderstanding as to the creditor's position, and the enforcement of the mortgage *fi. fa.* after foreclosure would, in a more direct manner, accomplish the same result as a decree vacating the sale.

2. What is said above is applicable as between the mortgage creditor and the executrix. As to the rights of the purchaser from the latter, and as to what course the creditor, after obtaining a judgment of foreclosure, should pursue, is not now in question. The purchaser not being a party to the present litigation, and not having been heard upon the questions involved, it would be improper for this court to now undertake to solve and adjudicate these issues. We therefore do not feel at liberty to pass upon them, but will leave the same open for future investigation and determination, should this hereafter become necessary.

3. The law is well settled that an agent to sell land cannot himself become the purchaser, unless the owner, with a full knowledge of all the facts, consents thereto. The principle which renders an agent incompetent to

purchase from himself, renders him alike incompetent to sell to his wife. As he is forbidden to purchase that which another has entrusted him to sell, for the reason that the temptation to take care of himself will override the duty he owes to his principal, it requires no great amount of reflection to perceive that he will ordinarily be influenced by the same motive in selling to his wife. It is hardly possible for a wife to make an advantageous contract of any kind without more or less benefit therefrom resulting to the husband. In this sense, as in many others, " the twain are one flesh," and the selfishness and desire for gain common to most mortals makes it expedient to prevent a husband and wife deal - ing between themselves with the property of another of which the husband has charge in a fiduciary capacity. A very strong and well-reasoned case in support of the above doctrine is that of Tyler *et al. v.* Sanborn (Ill.), 21 N. E. Rep. 193, in which it was held that a purchase by a wife of land for the sale of which her husband was agent, with notice of his agency, will be set aside as fraudulent at the instance of his principal, who had no notice as to who was the purchaser, although there was no fraud in fact, and the wife purchased against the remonstrance of her husband and paid for the property out of her separate estate. The facts of that case show that parties in the east were anxious to sell certain lots they owned in Illinois. Their agent in that State bargained the lots at $1,000.00 to one B, and reported the fact to his principals, who accepted the offer and forwarded to the agent a deed conveying the property to B. Afterwards, B declined to accept the deed, and the agent's wife then proposed, against her husband's wishes, to pay the money and take the property herself. The matter was finally consummated by a delivery of the above mentioned deed to B, and his subsequent conveyance to the agent's wife. This sale was afterwards set

aside at the instance of the owners, as fraudulent in law against them, although the conduct of both the agent and his wife was absolutely free from all fraud in fact. This decision carries the doctrine announced in the case at bar to a very considerable length, and two of the seven justices dissented; but it serves to show that the law in cases of this kind has been, and should be, very strictly enforced. The fact that in Illinois the husband is entitled to dower in the real estate of the wife, undoubtedly contributed to some extent to the conclusion reached. We have no such law in Georgia, but no one can doubt that a husband has practically a beneficial though not a legal interest in the property of his wife. Reference is here made to the authorities cited in the case just mentioned, and also to Davoue v. Fanning & Wife, 2 Johns. Ch. 251, an examination of which will throw some light upon the question under consideration.

4. In the present case, the husband, acting as agent for the executrix, sold the land at public sale, the terms being cash. The father of the agent's wife bid off the land on his own account, but really intending that the purchase should be for the benefit of his daughter. He paid nothing, took no deed, and the sale to him was not consummated. Thereupon, the daughter, by her own consent and that of her father and her husband, the latter being, as already stated, the agent making the sale, was substituted in the place of her father as purchaser, and the terms of the sale were so modified as to make it partly for cash and partly on credit. Under these circumstances, the wife was really the purchaser from her husband; and moreover, there was an unauthorized change of the terms of sale. We therefore have no difficulty, in view of the principles hereinbefore stated, in holding that the above recited facts did not constitute a binding administration of the property as against the

creditor holding the mortgage, and he undoubtedly had an election to ratify or repudiate the transaction in question, as he might deem proper. This we adjudicate, so far as the executrix is concerned; but as between the creditor and the purchaser from the agent of the executrix, we leave the matter to be hereafter adjusted by agreement, or by such proceedings as may be appropriate. *Judgment reversed.*