## HOBBY v. FORD.

On the facts of this case and the law applicable thereto it was error to grant the interlocutory injunction.

No. 1205. JUNE 13, 1919.

Injunction. Before Judge Eve. Worth superior court. October 5, 1918.

Jack Hobby applied to the court of ordinary to be appointed administrator of the estate of Jesse Hobby. The application alleged, that the applicant was a citizen of this State, residing in the county where the application was made; that the deceased died intestate, and a resident of such county, leaving an estate of real and personal property of the probable value of three thousand dollars, and that under the law it was necessary that the estate be administered; that the decedent was the father of the applicant; and that he had been selected by a majority of those interested as distributees of the estate to be appointed as administrator. A citation was ordered to be issued and published. To the application Mrs. Ford filed a caveat on the ground that there was no necessity for an administration on the estate, for the reasons: (a) that the decedent at the time of his death owned some personalty, and a described tract of land; that by consent of the heirs at law all the personalty was sold and the proceeds used in payment of the debts against the estate, and therefore the estate owed no debts: (b) that prior to his death the decedent owned a certain lot of land containing 202½ acres

more or less; that he conveyed to each of three of his children (naming them. one of whom was the applicant for administration) 25 acres of the lot of land as an advancement to them, thus leaving approximately 125 acres of the lot to be divided among the other five children, the caveatrix being one of them; that these five children were therefore owners as tenants in common of the remaining 125 acres, being all of the land owned by the decedent when he died; that this land could, under the statute providing for the partition of lands, be distributed among them; and that "should there be any controversy as to the amount of land that should be divided, or among whom same should be divided, these questions could not be settled by a court of ordinary, it not having the power or jurisdiction, and that it would be necessary that a division or partition be had before the judge of the superior court, or before the superior court of said county." The caveat closed as follows: "Wherefore the caveatrix prays that such application be denied, and that the applicant be not appointed administrator on the said estate, and that administration be denied thereon."

On July 1, 1918, at the July term of the ordinary's court, a judgment was rendered against the caveat and the objections set forth therein, and appointing the applicant administrator of the decedent, and ordering that letters be issued to him as such upon his giving bond with approved security in the sum of $6000, and taking and subscribing the oath as provided by law. No appeal was entered from this judgment, and within five days after its rendition the applicant, as administrator, executed a bond in accordance with the judgment, which bond was approved by the court of ordinary. The oath was taken, and on the same date letters of administration were issued to him. Before he qualified as administrator, Mrs. Ford, who had resisted his application for administration, brought an equitable petition against him as an individual, and all the other heirs of the intestate, the allegations of the petition being in effect the same as the objections set forth in her caveat to his application for administration; the petition further stating that Hiram Bozeman and his two minor children, the husband and children of a deceased granddaughter of the intestate, Jesse Hobby, were as his heirs entitled to one share of his estate. They were made defendants to the petition. It was further alleged that Jack Hobby, and another one of the heirs, Dice Hobby,

12

were indebted to the estate in a stated amount as the balance due for rent for the years 1917 and 1918 of the land of which the intestate died seized and possessed. Another allegation was to the effect that the tracts of 25 acres each, deeded respectively to Jack Hobby and two other named heirs of the intestate, were intended by the testator as advancements to the grantees of all their interest in the lands of the intestate, and were so accepted by them, but they were contending that this was not true; and that Jack Hobby was applying for administration on the estate with a declared purpose as administrator to divide or distribute the remaining 125 acres of land among all of the eight heirs, and unless enjoined he would proceed to carry out his declared purpose, thus depriving petitioner and taking from her, as well as the other heirs who had not received advancements, "a substantial portion of their shares in the said realty, and of their shares in the said estate." Further, that "the money that the said Jack Hobby and Dice Hobby have in their hands on account of the rents . . can be easily distributed without administration; that the said land can be easily divided in kind, it being to the interest of all parties interested that same should be divided in kind, and all of the said five, this petitioner and the four others, who claim the said entire tract of land remaining, insisting and desiring that the same be divided among them in kind; and should it be determined that the eight should share, then the petitioner still insists and avers that it should be to the interest of all concerned to divide it in kind, and that it is not necessary in any event that the same be sold for distribution, and that it is not necessary that there be any administration on the said estate, the proceeding provided for by statute being ample and sufficient for the purpose of dividing the same in kind." The prayers were, that process issue to all of the heirs named in the petition: that Jack Hobby be restrained from proceeding to qualify as administrator of the intestate, and from taking any steps toward selling the land; that the controversy as to the persons entitled to share in the land or its proceeds be determined, and their respective shares be fixed; "that partitioners be appointed, as provided by law, to partition the said land in kind among those found to be entitled to same, and that each one's share, particularly that of petitioner, be admeasured and set apart, and due return and record thereof made;" and that Jack Hobby and Dice Hobby be required

to account for the rents and profits of the land for the two years during which they had been in possession of it, "and that they be required to pay the same into court, or to some one authorized by the court to receive the same, and that same be distributed to those entitled to same." There was a further prayer for general relief. Upon presentation of the petition the judge, on July 2, 1918, granted a temporary restraining order, as prayed, against Jack Hobby. All of the defendants, except Bozeman and his minor children, were either served or acknowledged service, prior to the date on which Jack Hobby executed the bond and took the oath as administrator.

When the case came on for a preliminary hearing under the order of the judge, the petition was demurred to on the ground that the allegations thereof did not authorize a court of equity to take jurisdiction, as it appeared that the court of ordinary had already assumed jurisdiction, and that the petition failed to show that any damage or loss was threatened to the interests of the plaintiff. Jack Hobby, Dice Hobby, and Worsham, the defendants to each of whom it was alleged the intestate had conveyed 25 acres of land as an advancement, answered, denying the material allegations of the petition. To the answer was attached as an exhibit a copy of the proceedings and judgment in the ordinary's court, and of the bond, oath, and letters of administration. The following amendment to the petition was allowed: "That the defendant Jack Hobby now comes into court and shows that he is the duly qualified administrator of the estate of Jesse Hobby, deceased, and makes answer to that effect and in that capacity. . . That the said Jack Hobby, in his capacity as the administrator of the said estate, be made a party defendant; and that the prayers of the original petition apply to him in his capacity as the administrator of the said estate as well as an individual; and that he be bound by the adjudication of the issues involved in regular course in both capacities, as an individual and as administrator of said estate."

After the submission of much evidence by both the plaintiff and the three defendants who answered, the court rendered judgment "that the plaintiff is lawfully entitled to a portion of the relief which she asks;" and "ordered that Jack Hobby, individually and in his capacity as administrator of the estate of Jesse Hobby, late of the county of Worth, be and he is hereby restrained and enjoined, pend-

ing the further order of this court, from taking any steps toward selling or in any manner incumbering the land described in plaintiff's petition, and from doing any further act toward the administration or distribution of the same." To this judgment Jack Hobby excepted.

*Passmore & Forehand,* for plaintiff in error.

*J. H. Tipton,* contra.

FISH, C. J. (After stating the foregoing facts.) Among the subject-matters of which courts of ordinary have authority to exercise original, exclusive, and general jurisdiction are, "the granting of letters testamentary, of administration, and the repeal or revocation of the same;" "the sale and disposition of the real property belonging to, and the distribution of deceased persons' estates," and "all such other matters and things as appertain or relate to estates of deceased persons." Civil Code, § 4790, (2), (4), (10). It follows that the judgment of a court of ordinary appointing an administrator of an estate is as conclusive in all respects as the judgments of other courts of original, exclusive, and general jurisdiction, and therefore is not subject to collateral attack. *Neal* v. *Boykin,* 129 *Ga.* 676 (59 S. E. 912, 121 Am. St. R. 237); *Sturtevant* v. *Robinson,* 133 *Ga.* 564-572 (66 S. E. 890); *Alabama Great Southern R. Co:* v. *Hill,* 139 *Ga.* 224, 227 (76 S. E. 1001, 43 L. R. A. (N. S.) 236, Ann. Cas. 1914D, 996); *Bowen* v. *Gaskins,* 144 *Ga.* 1 (85 S. E. 1007). The petition in this case was not brought for the purpose of setting aside or vacating the judgment of the court of ordinary appointing the defendant, Jack Hobby, administrator, and there was no specific prayer for such relief. There was no controversy as to the rendition of such judgment, but counsel for petitioner contends that it did not become effective, because the defendant, who had been appointed administrator, was served with the petition and a temporary restraining order thereon, before he gave the bond, took the oath, and had letters of administration issued to him. This fact did not authorize a court of equity to enjoin him from qualifying as administrator and receiving his letters. Equity will not interfere with the regular administration of an estate by the representative, upon the application of one interested therein, except there be danger of loss or other injury to his interests. Civil Code, § 4596; *Morrison* v. *McFarland,* 147 *Ga.* 465 (94 S. E. 569). And it has been held that a clear case of

imminent danger must be made out before equity will interfere with regular administration. *Powell* v. *Quinn,* 49 *Ga.* 523. While courts of equity have concurrent jurisdiction with courts of ordinary in the administration of the estates of deceased persons where equitable interference is necessary and proper for the full protection of the rights of the parties at interest (*Morrison* v. *McFarland,* supra), where the court of ordinary first takes jurisdiction it will retain it, unless a good reason be shown for the interference of equity. Civil Code, § 4540.

In this case the court of ordinary, which has original, exclusive, and general jurisdiction of the appointment of administrators, and the sale and disposition of deceased persons' estates, had rendered a judgment appointing an administrator, and fixing the bond he should give, thus taking and exercising the jurisdiction conferred by statute upon such court, and was proceeding to have the estate of the intestate duly administered therein; and no good reason was alleged and shown for the interference of equity by injunction for the protection of the interests of the petitioner in the estate. It does not appear that the administrator's bond would not fully protect petitioner's interest. If, in the opinion of the petitioner or of any of the other heirs, it should not be necessary for the administrator to sell the land for distribution, objection could be made in the court of ordinary, should the administrator apply in that court for leave to sell it. Civil Code, § 4026; *Grant* v. *Noel,* 118 *Ga.* 258 (45 S. E. 279). And if it were made to appear practicable, the ordinary could order a distribution in kind on the application of the administrator, or any distributee of the estate (Civil Code, §§ 4057 et seq.), provided all the distributees should agree to such a division,—for any one of them would have a right to insist upon a sale of the estate and a distribution of the proceeds; and where, as in this case, some of the distributees are minors, it would be necessary for them to have a legal representative as a party to the proceeding, and his consent to a distribution in kind, before it could be made. *Park* v. *Mullins,* 124 *Ga.* 1072, 1076 (53 S. E. 568). No question as to title to land was involved; and whether advancements had been made in land by the intestate prior to his death, to some of his children, and accepted by them as such, could be decided in the court of ordinary; and if this were found as a fact, the advancements would have to be first accounted for in the

distribution of the estate and in its administration by that court. Civil Code, §§ 4052, 4055.

In addition to the foregoing rulings, the judgment in the court of ordinary finding, over the objections of the petitioner, that an administration of the estate was necessary, and appointing an administrator—no appeal having been entered therefrom—was conclusive against petitioner, such objections being in substance the same as the allegations of the petition relied on to enjoin the administrator from proceeding to administer the estate.

We confidently conclude that it was error to grant the interlocutory injunction.

*Judgment reversed. All the Justices concur, except Beck, P. J., absent.*