**HURT v. COTTON STATES FERTILIZER CO. et al. (two cases).**

**SAME et al. v. ELLIS et al.**

**No. 11505.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 3, 1947.

Rehearing Denied Jan. 31, 1947.

54

John L. Westmoreland, of Atlanta, Ga., for appellants.

Charles J. Bloch, and Ellsworth Hall, Jr., both of Macon, Ga., and George P. Whitman, of Atlanta, Ga., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

These three appeals are from separate judgments in Causes Nos. 301, 316 and 324 on the docket of the District Court, which, though not consolidated for trial, were tried together, and are here on one record and under an agreement and stipulation making available the whole of the evidence and record wherever pertinent. In deciding the cases and determining the appeals, the whole record was made as free to the district judge and to us as if the cases had been not merely tried together but as one. But we think it conducive to a better understanding of the action of the trial court and of our decision to briefly describe the three cases and trace the course and result of each.

Of the three, only No. 301, the first filed, and, as respects Cotton States, the most important of them, has been here before. Filed June 14, 1944, by S. L. Hurt and Mrs. Virginia L. Hurt (Mrs. Joel Hurt Jr.), on behalf of Cotton States as a stockholder's derivative action, but later dismissed as to Mrs. Hurt, the petition alleged that they were citizens and residents of the State of Florida and the owners of 538.7 shares of the preferred stock of Cotton States Fertilizer Company. It charged the defendants with fraud and mismanagement to the detriment of the company and that two of the officers had paid themselves extravagant and exorbitant salaries, and prayed an accounting.

The defendants, Cotton States Fertilizer Company, Clay and O'Shaughnessey, filed full responsive pleadings to the complaint. Reciting the history of the company from the beginning of their connection with it, they denied specifically each charge of fraud and mismanagement and that exorbitant salaries had been claimed or paid. In addition, defendants insisted that two barriers stood in the way of the suit: (1) that plaintiffs were not the owners of the shares on which they based their claim to sue; and (2) that if they were, they were not owners of them at the time of the actions they complained of.

The cause was heard on July 6, 1944, and determined on these issues against the plaintiffs, and the bill was dismissed. The district judge found that they had not acquired their shares until December 10, 1943, after all of the events complained of, and that, therefore, under Rule 23, Federal Rules of Procedure, 28 U.S.C.A. following section 723c, authorizing stockholders' suits, plaintiffs were not entitled to sue because they were not stockholders at the time of the transaction of which they complained, nor did their shares afterward devolve on them by operation of law.

Of plaintiffs' claims that, as residuary legatees under the will, they were at all times equitable owners of part of the stock to which they acquired full title to in 1943, the court held that, the record showing that there were outstanding debts and that the estate had never been wound up, they were not as residuary legatees, under the rules, stockholders who could bring a derivative action.

Appealed to this court, the judgment was reversed [1] upon the holding that plaintiffs as residuary legatees were at all times with which their complaint dealt, equitable owners of the stock and, therefore, entitled to maintain their suit, their trustee, the executor, refusing to sue.

After the dismissal of Cause No. 301, but before its reversal, plaintiff S. L. Hurt,

---

[1] Hurt v. Cotton States Fertilizer Co. et al., 5 Cir., 145 F.2d 293.

on August 17, 1944, filed Cause No. 316. In it he alleged his ownership of one-half of 43.6 shares of stock acquired by him December 10, 1943, and this suit was pending when No. 301 was reversed. This suit, brought in the name and seeking relief on behalf of the corporation, contained also a prayer that the company be compelled to transfer the shares to plaintiff on the books of the company. The gravamen of its conplaints as a stockholder's suit were: that Clay and O'Shaughnessey were the owners of all the common stock of the company; that they had pursued a policy of refusing to pay dividends on the preferred stock, and on April 30, 1943, they had caused the corporation to issue to each of them a promissory note in the sum of $27,708; that the note was acquired in fraud of the company's interest; that in addition they had voted themselves excessive salaries and bonuses during the fiscal years ending June 30, 1942 and 1943. Specifically it was charged that, though in the year 1939 the company showed only a small profit and in the years 1940 and 1941 a loss, defendants, Clay and O'Shaughnessey, had caused the corporation to set up on its books as a liability to them for unpaid salaries, and later in 1943, to pay them, $17,000, with the result that in 1943 they required the corporation to pay them in salaries and bonuses a grand total of $35,000. Further alleging that in the latter part of September, 1943, plaintiff had learned of the fact that the defendants over a long period of time had converted to their own use and benefit assets of the corporation, the petition prayed for an accounting and for a mandate directing the book transfer of plaintiff's shares. Defendants moved to dismiss for want of jurisdiction as to amount and because it appeared that plaintiff was not a stockholder when the events complained of occurred. In addition there were full answers.

Cause No. 324 was filed July 12, 1944, by Frampton E. Ellis, as administrator de bonis non, and Mrs. Willie Martin Hurt, as a creditor of the Estate of Joel Hurt, Sr., against Cotton States Fertilizer Company, S. L. Hurt, and Virginia L. Hurt. These were the issues: Mrs. Willie Martin Hurt, claiming to be a creditor of the Estate of Joel Hurt, Sr. in the sum of nearly $40,000, and Ellis, as the administrator de bonis non, sued: to set aside as fraudulent the sale made to S. L. Hurt and to Mrs. Joel Hurt, Jr., jointly, in December, 1943, by Joel Hurt, Jr., acting as executor; to prevent the corporation from transferring these shares on the books to Hurt; and for a decree declaring the title to the certificate to be in Ellis, as administrator de bonis non, and enjoining defendants from transferring the certificate and the company from transferring it except to Ellis. The defendants answered the petition, denying fraud and that Mrs. Willie Martin Hurt was a creditor, and filed a counter claim against her.

The cases standing thus when No. 301 was reversed, all of them were set down and fully tried before the court without a jury, and full findings of fact and of law were made.

In Cause No. 301, the district judge filed elaborate and detailed findings. He found: that the charges of fraud and of the voting of exorbitant compensation were unfounded; that nothing had been done by the defendants in fraud of the corporation or of the preferred stockholders; that everything that had been done had been done in accordance with the terms of the certificates and to meet the exigencies of the situation in which the company found itself; and that all of these things had been done with the knowledge, acquiescence and approval of Joel Hurt, Jr., the then executor of the estate. He found for the defendants and gave judgment that the prayer of the complaint be denied.

In Cause No. 316, as to the stockholder's action it sought to bring, he found: that plaintiff, at the time the matters complained of occurred, was not the owner of the shares in right of which he brought the action; that the matters having transpired before he bought the stock and he having purchased it with full knowledge of the matters of which he complained, he could not bring a stockholder's suit in respect of such matters; and so finding, dismissed it.

As to so much of the suit as sought to mandamus the officers of the company to

transfer the stock into his name, he dismissed it on the ground that considered as an individual suit for a transfer of the stock to him, the stock was not of sufficient value to give the court jurisdiction, but, if it was, a federal court has no jurisdiction to issue a mandamus as an independent writ.

As to No. 324, the court found: that Mrs. Willie Martin Hurt was a creditor of the estate of Joel Hurt, Sr., for more than $35,000; that the sale by Joel Hurt, Jr., as executor, to S. L. Hurt and to the executor's wife for $5 a share was fraudulent and void; that though the stock was worth a great deal more than the amount for which it sold, it was worth a great deal less than the amount of her debt; and that the executor was entitled to an order cancelling the sale and for the delivery of the stock to him as executor.

Plaintiff in No. 301 and defendants in 324 are here seeking a reversal of the judgments. Abandoning No. 316 or regarding it as merged with No. 301, appellant Hurt treats the appeals as though there were two instead of three. His brief, making no reference whatever to the issues or the judgment in No. 316, is devoted mainly to Cause No. 301, but in some small part to Cause No. 324.

As to No. 301, while the brief does contain citations to, and quotations from, many authorities dealing generally with the fiduciary obligations to the company of its officers and directors, it is in substance only a reargument here of the facts argued and determined against appellant in the court below.

Taking up seriatim [2] the various wrongs alleged and the relief prayed, appellant, arguing both the effect of the undisputed evidence and the credibility of witnesses with particular emphasis on the unworthiness of belief of Clay and O'Shaughnessey, seeks as to each issue to have this court set aside the findings of the district judge and substitute therefor findings of its own.

As to No. 324, appellants attack the findings and judgment on the ground that the purported appointment of Ellis as administrator was a nullity, and that the evidence did not support the finding; (1) that the sale of the stock by Joel Hurt, Jr., was a fraud on the creditors of the estate; and (2) that Mrs. Willie Martin Hurt was a creditor of the estate. The first attack is a direct attack upon the sufficiency of the evidence to show that the sale was a fraud on the creditors. The second is based mainly on the position that the claim of Mrs. Hurt to a debt is based upon an illegal agreement because made to promote the procurement of a divorce.

As to No. 301, it will serve no useful purpose to detail the evidence as to each of the transactions under attack, nor to set out the findings of the district judge as to them. It is sufficient to refer to the rule which declares that the findings of the district judge must stand unless clearly erroneous, and to say that except as hereafter mentioned the evidence fully supports the findings.

Because of the fact that through so many years no dividends have been paid on the preferred stock and the further fact that, though the company has never made large profits, the defendants, the common stockholders, have been regularly drawing substantial salaries, we have carefully examined the record in order to have that understanding of it which would enable us to put ourselves, as the district judge was able to put himself, in the place of the actors in the scenes and events complained of and understood them as they transpired. That reading, with its revelation of the great difficulties the company went through, its practical insolvency, the obligation of the common stockholders to personally endorse the R.F.C. loan, the agreement of the preferred stockholders to cut their stock in half and to accept certificates for it containing severe restrictions on the declara-

---

[2] (1) Howell Deal; (2) Growers Service & Supply Co.; (3) Clay Deal; (4) Thompson Deal; (5) Salaries and Bonuses; (6) Restoration of Status Quo:
"Because of the frauds practiced by Clay, Howell and the other Directors at the time the Hurts were persuaded to cut their preferred stock in half, the preferred stock should be instated for the full amount evidenced by the 1932 issue— 962 shares of preferred stock";
(7) Lien and Receiver; (8) Attorneys' Fees and Expenses.

tion of dividends on the preferred, leaves us in no doubt that the evidence supports the findings of the district judge that none of the things now complained of by plaintiff, except the recent bonuses to Clay and O'Shaughnessey, of which more later, were illegal, done in fraud of the company, or otherwise exceptionable. It convinces us, too, that they were not only known to, and acquiesced in, by the plaintiff and his representatives but they were agreed to by him and them in the hope, if not belief, that the loan, whose securing made necessary the doing of many of the things complained of, would finally bring the company out and give value to the preferred stock, then practically without value. Indeed, at the very time and as a part of the transactions of which plaintiff now complains, he and the others interested with him, knowing the difficult position the company was in and the danger of its insolvency, agreed not only to cut their preferred shares in half but to accept in lieu thereof certificates containing restrictive provisions [3] which

prove more strongly than any oral testimony could do that everything that was done was in a desperate effort to rid a greatly encumbered concern of burdens and difficulties not otherwise to be borne by putting its exhausted and meager present in pledge in the hope of better times and prospects in the long future. The fact that the company is now in greatly better shape than it was in then, that it has been yearly getting in better shape, that the R. F.C. loan is about to be, or has already been, paid off, and that in time, the preferred stock, if conditions continue as at present, will be on a dividend basis and have real value, testify not only to the absence of fraud doing but to the wisdom and general fairness of the course then pursued and completely explain, indeed justify, acts now seized upon by plaintiffs as fraudulent outrages.

As to the fixed salaries as distinguished from the bonuses paid defendants, these were initiated in 1935, when George

[3] "Cotton States Fertilizer Company Macon, George.

"This certifies that ―――― is the owner of ―――― shares of the preferred capital stock of Cotton States Fertilizer Company transferable only on the books of the corporation by the holder hereof in person or by attorney upon the surrender of this certificate properly endorsed. This certificate entitles the holder to receive on the first day of July in each year from July 1st, 1934, cumulative dividends thereon at the rate of 6% per annum before any dividends shall be declared on common stock.

"Shares represented by this certificate is/or are a part of an issue of 500 shares, each share being on the par value of $100.00; all of said shares standing on equal footing as to dividends, redemption, payment and all other rights. This preferred stock has no voting power in the corporation.

"The corporation agrees to redeem this preferred stock out of the net profits of the company, if, as and when earned as follows:

"When any dividend shall be declared on common stock of the company, an amount equal to such dividend on common stock shall be set aside by the company and be used to retire the outstanding preferred stock from time to time. No dividend on common stock shall be declared and paid unless a like amount

is applied by the company to the retirement of said preferred stock.

"Dividends on outstanding stock shall be declared from net profits at the conclusion of any fiscal year during which net profits shall be earned and available for dividends; it being understood that funds to the amount owing to creditors and also not exceeding $125,000.00 for working capital shall not be available for dividends. Salaries of officers and directors shall not exceed $10,000.00 annually to any one officer or director and not exceeding 7½% of the net sales to all officers and directors.

"Said preferred stock shall be subject to retirement at any time at the option of the company upon the terms above stated, and in the event any preferred stockholder shall not accept such retirement payment and surrender the preferred stock certificates upon notice by mail to the address appearing on the books of the company, then the company may accomplish such retirement by depositing the amount of such retirement fund applicable to said preferred shares in any bank or trust company at Macon, Ga., to the credit of said preferred stockholder at any time after ten days after said notice of retirement shall have been mailed to said preferred stockholder, and thereupon the company shall be relieved of all liability in connection with said preferred stock."

T. Thompson owned the majority of the common stock, and he and his son were two of the directors. It was with the understanding, that these were, or were to be, fixed as their salaries in and for each of the years the petition deals with, that Clay and O'Shaughnessey accepted their offices and undertook. to, and did, perform their duties. Refixed each year since their first initiation, they have in no year equalled or even approached the limits set on them in the preferred certificates. They have been known to and acquiesced in by the plaintiff and approved by the R.F.C. and they may be considered fair. As the district judge did, we find no fault with them.

The district judge, in his findings, made no distinction between the fixed salaries of $6,000 for Clay and $4,800 for O'Shaughnessey established in 1935 and since continued, the bonuses of 40 per cent of their salaries voted them in the fiscal years ending June 30, 1942 and 1943, and the extra bonuses of 25% of their salaries, voted them on June 30, 1943, for the fiscal years ending June 30, 1942 and 1943.

These bonuses differ from the salaries and from each other. They require separate consideration.

We need not write extensively on the legal principles governing the voting of bonuses, that is increased compensation for services already rendered gratuitously or for a prescribed compensation, where there is neither express or implied understanding that additional compensation may be granted. They are well settled and well known. Under well established principles of corporation law,[4] directors and officers are quasi-trustees for the corporation and the stockholders, they hold office under an implied obligation to serve them faithfully, they may take no personal advantage of their possession of power. As to bonuses, which are merely gratuitous payments, and as to similar retroactive increases of salary, it is Hornbook law that, except where there has been an express or implied understanding that they may be granted if conditions warrant, there is no consideration for them, and their grant by the directors alone will not sustain them against attack by stockholders. It is true that normally the stockholders may grant them or ratify their granting. Even they may not do so, however, with the purpose or the result of overreaching or working a fraud or imposition on the corporation, the minority stockholders or other unprotected interests.[5] It is sufficient for the purpose of this case to say: that gratuitous bonuses and additional compensation granted by directors for services already rendered under fixed salaries are normally without consideration in law; that they are, therefore, suspect and will be readily upset unless their propriety is made clearly to appear; that where, as was the case here, in respect of the additional compensations awarded retroactively in June, 1943, the fact that the directors who voted them were also owners of all the common stock will not save them from attack; and that they will be disallowed if it is made to appear that either their purpose or their result has been not to award reasonable compensation for services, but to impose upon or overreach preferred stockholders.

Applying these principles to the facts of this case, it is readily apparent, we think, that the bonuses voted in June, 1942, for the fiscal year ending June 30, 1942, and those voted in September, 1942, for the fiscal year ending in June, 1943, may not be condemned and received back. Prima facie subject to attack as they were, both because directors were the beneficiaries of the vote (O'Shaughnessey voted for the June, 1942, bonus, and both O'Shaughnessey and Clay voted for that of September, 1942), and because they were retroactive, the fact that they were approved by the vote of the two Thompsons, who owned the majority of the stock and controlled the corporation makes them invulnerable to attack by common stockholders.[6]

---

[4] 13 Am.Jur., Secs. 997, 1036; 19 C.J. S., Corporations, § 805.

[5] 13 Am.Jur. Sec. 1037, "Bonuses and Gratuitous Payments"; 19 C.J.S., Corporations, § 804, last paragraph; Putnam v. Juvenile Shoe Corporation, 307 Mo.

74, 269 S.W. 593, 40 A.L.R. 1412; Annotated 40 A.L.R. 1423; Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, 88 A.L.R. 744, Annotated 80 A. L.R. 751.

[6] Mathews v. Fort Valley Cotton Mills,

As to the preferred stockholders, the facts set out in the Minutes and otherwise shown that the bonuses were voted and allowed on the ground that the plant and business had been converted to war purposes from the manufacturing of fertilizer to the making of material for explosives for the United States, entailing much extra effort on the part of the managing officers, sustains the action of the district judge in finding that these allowances were not in fraud of or an imposition on the preferred stockholders and that they ought not to be set aside.

As to the additional compensation voted in June, 1943, to be retroactive in 1942 and 1943, the matter stands quite differently. These bonuses were voted by Clay and O'Shaughnessey to themselves, and while their ownership of all the common stock would save them from attack at the suit of the corporation so far as the right of common stockholders were concerned,[7] this would not save them against a stockholders' suit brought by preferred stockholders, who certainly had neither authorized nor ratified it.[8] The fact that if this additional compensation had not been voted, most of it would have gone to pay income taxes is no sound reason for voting them, and no defense to the suit. As directors, Clay and O'Shaughnessey did not have the power to vote themselves back salaries. As stockholders, they will be prevented from exercising that power when, as here,

it is apparent that the result, if not the purpose, of the voting, is to impose on the preferred stockholders.[9] This is not to say that Clay and O'Shaughnessy, as the directors of the company and owners of its common stock, have not the right to manage and run it, or that they cannot fix reasonable compensation for their services, increasing or diminishing it from time to time as conditions warrant. It is to say though, that the voting here in 1943 of additional retroactive compensation to themselves by directors, who were the holders of all the common stock, was not justified unless, and this seems to have been the theory on which the retroactive compensation was voted,[10] the salary limit provisions in the preferred certificates was a contract with the common stockholders that they could fix salaries for themselves up to the limit stated in the certificate without regard to whether those salaries were or were not otherwise reasonable. Rogers v. Hill, 289 U.S. 582, 53 S. Ct. 731, 77 L.Ed. 1385, 88 A.L.R. 744 is authority to the contrary.

Viewed piecemeal or as a whole then, the record furnishes no support for the charges of fraud and overreaching, with which the petition so plentifully abounds. On the contrary, except as to the retroactive compensation voted in June, 1943, which is without legal basis, and perhaps as to bonuses and additional compensation voted for 1944 and 1945,[11] it supports the findings of the district judge in effect that what was

---

179 Ga. 580, 176 S.E. 505, 510, where it is said: "There is no statute in Georgia prohibiting a director of a corporation from voting on a resolution fixing a salary for himself. And when the other two directors, constituting two-thirds of the board of directors, were present and voted for the resolution, and where the stockholders acquiesced therein for several years, such action of the directors will bind the corporation".

[7] Mathews v. Fort Valley Cotton Mills, note 6, supra.

[8] Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, 88 A.L.R. 744.

[9] Eaton v. Robinson, 19 R.I. 146, 31 A. 1058, 32 A. 339, 29 L.R.A. 100.

[10] "provided that their total salaries for the year ending 1945 do not exceed the amount provided for in the outstanding preferred stock of the company". See note 11, infra.

[11] As to when and how the bonuses and additional compensation for 1944 and 1945 were voted, the record is not clear. In the tabulation in appellee's brief at p. 181, it appears that Clay and O'Shaughnessy drew for 1944 and 1945 the same amounts they had drawn for 1942 and 1943. In the record on pp. 522–523, there appear notations from the minutes of Dec. 30, 1944, with repect to (1) ratification of bonuses paid Clay and O'Shaughnessey for the year ending June 30, 1944, and the voting of bonuses as to both Clay and O'Shaughnessey for the year ending June 30, 1945, "provided that their total salaries for the year ending 1945 do not exceed the amount provided for in the outstanding preferred stock of the company". (Italics supplied.) The record shows no more than this as to these bonuses, nor has the petition filed in April, 1944, been

done was done not fraudulently, oppressively, or illegally, but, honestly, legally, and in good faith and with the best interests of the corporation in mind.

 While appellant has abandoned here his appeal from the judgment in cause No. 316, it is not amiss to say that the appeal is without merit. It is undisputed that the stock, in right of which plaintiff sues, was acquired by him after the occurrence of the things he complains of. It is too plain for argument, therefore, that if these complaints had any basis in fact, and the district judge found that they did not, plaintiff would not have been entitled to sue in right of them. In so far as the suit could be considered not as a stockholder's suit but as a suit brought by plaintiff individually to mandamus the company to transfer the shares into his name, the district judge was right in holding that the requisite jurisdictional amount was lacking and also that a federal district court had no jurisdiction over an original proceeding seeking relief by mandamus.[12]

 As to Cause No. 324, we think that the claims made and, the evidence offered by plaintiffs in Cause No. 301 as to the great value of the certificate they purportedly bought from Joel Hurt, Jr., and their claims that defendant Clay's efforts to buy the stock from Hurt for $5 a share were fraudulent, together with the undisputed facts that the estate was heavily indebted and that the stock was worth considerably in excess of the $5 paid, leave in no doubt that

the district judge was right in finding that the sale was fraudulent and void and in ordering it set aside. In addition, we agree with him that the sale by the executor to his wife was the same in Georgia as a sale to himself and voidable within a reasonable time at the option of those interested in the estate.[13]

 As to the right of Ellis to be, and sue as, executor, of which defendants try to make a point, it is quite plain that this has been determined by the Court of Ordinary which has exclusive and general jurisdiction over estates, and that the attack made upon his appointment is a collateral one which may not be maintained.[14]

As to Mrs. Hurt's claim against the estate, we think it quite clear that the record supports the finding of the district judge that she had a substantial claim against the estate which is valid and unpaid for an amount considerably in excess of the present value of the certificate in controversy.

Nothing appearing for which the judgments appealed from in Nos. 316 and 324 should be set aside or modified, they are affirmed.

In Cause No. 301, the judgment denied all the prayers of the complaint. These prayers, since the petition was filed April 18, 1944, certainly included the recovery of the retroactive bonuses voted in June, 1943, which we have condemned and since, though the petition was not amended, evidence was offered without objection in respect of bonuses and additional compensation voted for 1944 and 1945, the petition

amended to include allegations as to the bonuses and additional compensation paid for 1944 and 1945. We, therefore, do not deal with them except in principle, but leave them to be dealt with by the district judge on remand in accordance with the views herein expressed.

[12] Knapp v. Lake Shore & M. S. R. Co., 197 U.S. 536, 25 S.Ct. 538, 49 L.Ed. 870; Creager v. Bryan, D.C., 287 F. 362.

[13] Word v. Davis, 107 Ga. 780, 33 S. E. 691; Moore v. Carey, 116 Ga. 28, 42 S.E. 258; Lowery v. Idelson, 117 Ga. 778, 45 S.E. 51; Fricker v. Americus Imp. Co., 124 Ga. 165, 52 S.Ct. 65; Reed v. Aubrey, 91 Ga. 435, 17 S.E. 1022, 44 Am.St.Rep. 49.

[14] Code of Georgia Annotated, Section 24-1901.

"The courts of ordinary in Georgia are courts of original, exclusive, and general jurisdiction over decedents' estates, and the subject-matter of these orders (order of ordinary accepting resignation of one administrator and appointing another) and its judgments, are no more open to collateral attack than the judgments, decrees or orders of any other court". Veach v. Rice, 131 U.S. 293, 9 S.Ct. 730, 737, 33 L.Ed. 163, 170, and cases cited.

"The judgment of a court of ordinary appointing an administrator of an estate is as conclusive in all respects as the judgments of other courts of original, exclusive, and general jurisdiction, and therefore is not subject to collateral attack". Hobby v. Ford, 149 Ga. 176, 180, 99 S.E. 624, 626, and cases cited.

may be considered amended so as to include them. The judgment in Cause No. 301, therefore, except as to the additional retroactive compensation voted in June, 1943, and as to bonuses and additional compensation voted in the years following, will be in all things affirmed. As to these bonuses and additional compensation, the cause will be remanded with directions to permit amendment of the pleadings to bring them down to date in respect to the claims as to them and to proceed to hearing and judgment in accordance herewith. Costs of appeal to be taxed three-fourths to appellant and one-fourth to appellees.