No. 77.—SOPHIA H. SHORTER and others, plaintiffs in error, *vs.* GEORGE HARGROVES, Jr., Admr. &c. defendant in error.

[1.] Where a bill was filed by the distributees of an intestate's estate, against the representative of one of the administrators thereof, who had the sole and exclusive control of the administration, (his co-administrator having done nothing more than qualify as such,) to account for the estate alleged to be in his hands, charging him with having administered and wasted the same : *Held,* that his co-administrator was not a *necessary* party to such suit.

[2.] When a bill is filed against an administrator, charging him with a breach of trust, in having misapplied and wasted the assets of the estate, the decree may be rendered against him *de bonis propriis.*

[3.] In this State, an infant who has a guardian appointed and qualified according to the provisions of the Act of 1820, may maintain a suit in Equity by such guardian.

[4.] Because an administrator *de bonis non may,* under the provisions of the Act of 1845, call the representative of an administrator who died chargeable to the estate for having *wasted* and misapplied the assets thereof, to an account, it does not necessarily follow, that the *distributees* of such estate *may not.*

[5.] When a complainant seeks to surcharge and falsify a stated account, returned by an administrator to the Court of Ordinary, the burden of proof is upon him; consequently the allegations in his bill should be sufficient to admit the evidence for that purpose, at the trial.

[6.] When there are only *mistakes* and *omissions* in a stated account, the party shall be allowed no more than to surcharge and falsify ; but if it is apparent to the Court, that there has been *fraud* and imposition in the settlement of the account, the whole may be opened.

Shorter and others *vs.* Hargroves.

In Equity, in Muscogee Superior Court. Decision on demurrer, by Judge IVERSON. May Term, 1852.

Sophia H. Shorter, the widow of Eli S. Shorter, and Reuben C. Shorter, John A. Urquhart and wife, and Virginia Shorter, by her guardian, H. S. Smith, filed a bill, as the distributees and heirs at law of Eli S. Shorter, charging that Eli S. Shorter died possessed of a large estate; that Sophia H. Shorter and James H. Shorter, were appointed and qualified as the administrators on his estate; that James H. Shorter was the only acting administrator, and had the sole, exclusive, and entire administration of said estate, to the exclusion of said Sophia H. who did nothing more than qualify as such; possessed himself of the whole estate, and by various fraudulent devices (specially set forth in the bill) converted to his own use the whole of the estate; that by false and fraudulent representations, he procured from the complainants, (who had great confidence in him,) full acquittances and receipts for a mere nominal consideration; that James H. Shorter was dead, and George Hargroves was his regularly appointed administrator. The prayer of the bill was for an account. To this bill an answer was filed, to which was appended an exemplification of the returns and accounts of James H. Shorter, as administrator. Complainants, by leave of the Court, amended their bill, and sought therein to surcharge and falsify many of the credits allowed in the returns.

To the bill, as amended, a demurrer was filed—

1st. Because it appears from the bill, that Sophia H. Shorter, the surviving administrator of Eli S. Shorter, is a necessary party to the bill, and is not made so in her representative capacity.

2d. Because the heirs at law are not the proper parties to ask for an account upon the estate; but the surviving administratrix is the proper party.

3d. Because Virginia Shorter, one of the complainants, being an infant, can sue only by *next* friend, or guardian *ad litem.*

4th. That the following allegations in the bill are not sufficiently certain and definite:

1. "Your orators charge that there were about fifteen thou-

sand acres of land belonging to the said Eli S. Shorter, in the State of Mississippi, of the value of one hundred thousand dollars, or some such large amount, all of which with the title and evidences of the title and interest of said Eli S. went, as before charged, into the hands and possession of said James H.; that he and his administrator since his death, have sold a portion of said lands and received therefor the sum of $50,000, or some such sum, and complainants here ask that the defendant may discover and distinctly set forth what lands, describing by schedule or otherwise each tract and its value, and what portion has been sold, and at what price, and also the evidence of title to the same in his possession or control; what portion was sold to said Cowles, or taken back in settlement of said claim, and otherwise belonged to Eli S. Shorter.

2. "That the said James H. Shorter had misapplied the funds and effects of said estate of the said Eli S.—in this, that he paid, as shown by voucher No. 7, in the return for the year 1837, five hundred dollars, when there was no debt due from said estate, and no legal evidence of the same furnished by said James H." (The item No. 7, was as follows: "Cash paid Eli Shorter's subscription to open street, by H. S. Smith, $500 00.)

3. "Also the same in regard to payment, as shown by voucher No. 15, in same return. (No. 15 was as follows: "Cash paid Arthur B. Davis, agent for T. W. Smith & Co. This amount of cash indorsed by them to Eli S. Shorter, $19,950 00.)

4. "Also the same in relation to payment, as shown by voucher No. 22, in said return." (No. 22 was as follows: "J. H. Falconer's note endorsed by Eli Shorter, payable at the Bank of Pensacola, in Apalachicola, and interest paid J. S. Calhoun, $3022 25.)

5. "That he paid E. L. DeGraffenreid as shown by voucher No. 46, in same return, when the said DeGraffenreid was indebted to said estate of much larger sum, and which the said James H. has returned as insolvent. (No. 46 was as follows: "Cash advanced E. L. DeGraffenreid on account last sickness, $98.")

6. "That the payment, as shown by voucher No. 47, in said

Shorter and others *vs.* Hargroves.

returns, was made illegally and improperly, for the reason that there was no debt against said estate, and no sufficient evidence of it to authorize payment by the administrator. (No. 47 was as follows: "Eli S. Shorter, account with Bank of Columbus, for overdraw and interest, $13,205 33, and stock, $6,825 06, making $20,030 20.")

7. "That the payment, as shown by voucher No. 50, in same return, was made to Jerry Cowles, when the estate held against him a note of more than double the amount of said debt, and which was never paid to the estate." (No. 50 was as follows: "Paid Eli S. Shorter's note to Seaton Grantland, due June 29, 1836, and interest, $13,287 59.")

8. "That he paid, as shown by voucher No. 62, same return, when there was no debt and not sufficient evidence thereof to authorize the same." (No. 62 was as follows: "Cash paid Dan'l Carpenter, in part for money collected for him by Eli S. Shorter, as his attorney, $1,000.")

9. "That in fact there was no payment made, as per voucher No. 82. (No. 82 was as follows: "Cash sent per mail to Sarah W. Harris, executrix, as per request, $200.")

10. "That the payment made, as per voucher No. 84, in same return, was unauthorized, as the same was no debt against said estate." (No. 84 was as follows: "Paid Moore & Taver's account on Shorter, Tarver & Co., Eli S. Shorter ⅓, $225 83.")

11. "That the said James H. ought not to be allowed credit as claimed in said return, for voucher Nos. 86, 91, 92 and 93, as there is no evidence of such payments, and they were not debts against said estate, if paid." (These were moneys paid and advanced to Mrs. Shorter and Reuben C. Shorter, for tuition, &c.")

12. "That the payment, as shown by voucher No. 107, in return of said administrator, for 1838, was made without sufficient evidence of the debt against said estate, and paid on a note on Pearce N. Lewis, purchased by said James H. with the funds of said estate, at a discount of 25 per cent. or some such large discount." (No. 107 was as follows: "Paid executor and executrix of Dan'l Carpenter, in full of their account of money

collected by Eli S. Shorter, on the case of St. John & Lewis *vs.* Norton & Mitchell, $3,652 75.")

13. " That for payment, as shown by voucher No. 147, in said return, there was no evidence the same was ever paid." (No. 147 was as follows : " Cash sent Mrs. Sarah H. Harris per mail, by her request, in part per account, $200.")

14. "" That the payment made, as claimed by voucher No. 170, in said return, is illegal, because Thomas E. Tygart was at the time largely indebted to the estate, and which was never collected." (No. 170 was as follows : " Cash paid Thomas E. Tygart, $47."

15. " That the payment, as claimed by voucher No. 178, in said return, is improper, as the claim paid was not a debt against said estate, and because no such payment was in fact paid." (No. 178 was as follows : " Paid amount of Talcomb & Kimbrough's account on Shorter, Tarver & Co. paid $691 33. Eli S. Shorter, ⅓ paid $230 44.")

16. " That the payment, as claimed as per voucher No. 204, in return of 1839, is illegal and improper ; because the claim paid was not a debt against said estate, and because no such payment was in fact made." (No. 204 was as follows : " Charles E. Mims' account paid, $766 35.")

17. " That the same is true in regard to the credit claimed for voucher No. 229 ; that it was no claim against the estate— was never paid by James H. Shorter, and was improperly allowed by the Court of Ordinary." (No. 229 was as follows : " My account for sundries furnished for the family, $1949 98.")

18. " That the payments to D. Golightly, Holt & Echols, and Thomas Foster, were extravagant and unnecessary, and improperly paid and allowed." (These items were as follows : " David Golightly, account paid, $724 92." " Colquitt, Holt and Echols, account paid, $500." " Cash paid Thomas Foster, Esq. on account for professional services, $1,300.")

19. " That the payment claimed, as per voucher No. 277, was illegal and improper; because the plaintiffs in said *fi. fa.* and owners of said claims were at the time largely indebted to said estate, and the administrator should have set off the same

against said claim." (No. 277 was as follows: "Cash paid judgment, Jacobi & Hani *vs.* James H. Shorter, administrator, and Sophia H. Shorter, administratrix, $443 75.")

20. "That the payment, as claimed by voucher No. 320, return of 1842, was illegal and improperly allowed; because the claim was not a debt against the estate, and no evidence of that fact before the Court of Ordinary, nor that the same had been paid." (No. 320 was as follows: "Cash paid Francis T. Anderson, attorney at law, toward paying cost and expenses of suit in Virginia *vs.* Preston & Nelms, $200.")

21. "That the payment, claimed by voucher No. 271, is illegal and improper, in this, that the claim was not a debt against said estate; that the proof before the Court of Ordinary was insufficient to establish that fact; that the administrator presented the drafts to himself and paid the money to himself, if any was paid—but complainants deny that any ought to have been paid, or was in fact paid; and that no credit ought therefore to have been allowed said administrator therefor." (No. 271 was as follows: "Paid Eli S. Shorter's acceptance of John S. Scott's drafts, viz: one for $1861 12—interest $75 97; also one originally $5,713 89, on which are several credits, leaving amount due thereon, $4,999 96; making together $7,617 05.")

22. "That the credit claimed and allowed, as per voucher No. 290, in same return, is illegal and improperly allowed, for that there was no mistake in the original return; that the original credit given the estate was correct, and the correction illegal and erroneous." (No. 290 was as follows: "This amount erroneously credited to the estate on the 4th April, and 4th May, 1837, and 1st January, 1838, being John S. Scott's proportionate part of the notes of Alfred Shorter and Obadiah Echols, as appears by intestate's statement in writing, $5,472 00.")

23. "Your orators charge that in addition to the foregoing specifications, are numerous acts of mismanagement and malfeasance of said administrator, as shown by his said returns, and which they ask in the hearing of this case may be corrected."

24. "That the said administrator show by his returns to have paid claims due others, that were not debts against said estate."

25. "That he has paid accounts and demands bearing no interest against said estate, and has left unpaid notes and other demands on which interest was accruing."

26. "That he sold the effects of said estate at a discount, viz: the claim against Echols & Thornton, which he was not allowed to do by law, and for which there was no necessity."

27. "That the payment claimed by voucher No. 140, in return of 1838, was made, if at all, without authority of law, and improperly allowed by the Court of Ordinary, in this, that the debt (if it existed at all, which complainants deny,) was in the shape of drafts drawn by said Eli S. which was the proper and the only evidence of said debt; that at the time said administrator paid said debt, the same was not proved against said estate; that it was paid, if at all, in the shape and form of an account and large amounts of interest charged and paid; and your orators say that the payment made by said administrator, was made in the notes of Philo D. Woodruff or James N. Bethune, or Woodruff & Bethune, belonging to said estate, and nothing else; that no money was paid nor other notes than those above stated."

28. "That the several credits claimed by said administrator in said returns, for payment to the heirs of Stephen W. Harris, are improper, for that credit has been given twice for the same payment."

29. "That the said administrator rented the store-house and real estate, and hired out the negroes of said estate, to insolvent persons, and required no security, who never paid for the same, to the great loss and injury of said estate."

30. "That he has failed to collect the debts due said estate, when he could have done so."

31. "That he has returned notes and demands as insolvent, which were not so, to wit: the notes of Woodruff & Bethune, and others, as shown by his return, and by his neglect has permitted the Statute of Limitations to bar the right of the heirs

of the said Eli S. to sue for and recover said demands, and taken no steps whatever to present the same."

32. " And your orators further charge, that the said James H. has collected and received from the sale of a house and lot, in the Town of Rome, in said State, belonging to said estate, in the early part of the year 1844, the sum of one thousand dollars, which is not accounted for in said returns."

33. Another ground of demurrer taken, was that the allegation of complainants, that " they did not suspect anything improper, until a short time before the death of said James H. Shorter, and entertained but a suspicion, which accidental circumstances had created, and which induced them to look into his conduct; which examination was commenced, but mainly executed since his death, and the result of which is shown in the charges, in the original and amended bill."

34. " That the said James H. falsely represented to complainants the quantity and value of said Mississippi lands."

35. There is no offer in the bill to do equity.

The Court, upon hearing argument on the demurrer, sustained the same, on each and all of the grounds therein taken, and on this decision error has been assigned.

W. DOUGHERTY, for plaintiff in error.

BENNING, for defendants in error.

*By the Court.*—WARNER, J. delivering the opinion.

The complainants in this bill, are the heirs at law and legal distributees of the late Eli S. Shorter, deceased, who seek a decree for that portion of the estate of the decedent, which went into the hands of James H. Shorter, one of the administrators thereof; alleging fraud, mismanagement and waste, on the part of such administrator, who is now dead, and George Hargroves, who is his administrator, is made a party defendant.

Sophia H. Shorter, who is one of the distributees of said estate, and James H. Shorter, were the administrators on the estate

of Eli S. Shorter, deceased.   It is alleged in the bill, that James
H. Shorter had the *sole, exclusive, and entire control of the admin-
istration of said estate, to the exclusion of the said Sophia H. who did
nothing more than qualify, as such legal representative.*

[1.] The first ground of demurrer which we shall consider,
is that which alleges the want of proper parties.

The defendant insisted in the Court below, and contends ·
here, that Sophia H. Shorter, who was one of the administrators
of Eli S. Shorter, deceased, is a *necessary* party to this suit.

This bill only seeks a decree for so much of the estate of Eli
S. Shorter, as went into the hands of James H. Shorter, as his
administrator, which has been administered, improperly manag-
ed, and wasted *by him.*   The bill does not seek to charge Mrs.
Shorter, the other surviving trustee, with anything; but on the
contrary, expressly charges, that James H. Shorter had *the sole,
exclusive, and entire control of the administration of said estate.*   A
*devastavit,* by one of two administrators, will not charge his
companion, unless he has intentionally, or otherwise, contributed
to it.   (*Williams' Exrs.* 1118.)   The rule, as applicable to the
case made by this bill, is stated by Mr. *Justice Story,* in his Com-
mentary on Equity Pleading.   "If the bill is so framed, as only
to seek an account of so much of the trust fund, as has come to
the hands of a particular trustee, *he alone is a necessary party,* at
least, unless the bill should charge a breach of trust in *all the
trustees.*"   *Story's Eq. Pl.* 191, §214.

[2.] Inasmuch as this bill charges James H. Shorter, the ad-
ministrator, with fraud, maladministration, and waste of the as-
sets which came into his hands, the decree would have been
rendered against him, if in life, *de bonis propriis,* as was ruled by
this Court, in *Saunders vs. Smith, administrator,* (3 *Kelly,* 121.)
The Court below erred, in our judgment, in deciding that So-
phia H. Shorter, administratrix of Eli S.· Shorter, deceased, was
a *necessary* party to this bill.

[3.] The next objection taken in the demurrer is, that Vir-
ginia Shorter, one of the complainants, is an *infant,* who sues by
*her guardian,* H. S. Smith, when she should have sued by her
*next friend.*   In view of the Act of 1820, which was passed for

the protection of the estates of orphans, regulating the appointment of guardians, and requiring them to give bond and security, we are of opinion, that an infant who has a guardian appointed and qualified, according to the provisions of that Act, may maintain a suit in Equity in this Sate, by such guardian.

[4.] The defendant, by his demurrer, also insists, that the complainants are not the proper parties to call for an account of the administration of the estate of Eli S. Shorter by James H. Shorter, his administrator, inasmuch, as James H. Shorter *died chargeable* to the estate which he represented, and therefore, the surviving administratrix is the proper person to have an account; or according to the provisions of the Act of 1845, an administrator *de bonis non*, on the estate of Eli S. Shorter, would be the proper party to institute the suit. By the Act of 1845, it is declared, that " whenever any executor or administrator, may have been heretofore, or may be hereafter removed, or depart this life, chargeable to the estate which he or she represented, it shall be the duty of such removed executor or administrator, to *account fully* with the administrator *de bonis non*, who may be appointed to finish the administration of such estate." *Cobb's New Dig.* 335. Sophia H. Shorter is not the administrator *de bonis non* of Eli S. Shorter, deceased, nor could she, as the survivor, call the legal representative of her deceased co-administrator, to an account for his *devastavit* of the assets, which he had administered in his lifetime. By the Act of 1836, it is made lawful for any one distributee, or person interested in any estate, to institute his or her bill in Equity, to compel an account or distribution of an estate, without making the other distributees or parties in interest, complainants. (*Prince*, 475.) If it is lawful for one distributee to sue for his or her distributive share of an estate, it would seem to follow as a legitimate consequence, that more than one might sue therefor. It does not appear on the face of this record, that there has ever been any administrator *de bonis non* appointed on the estate of Eli S. Shorter, deceased; but concede there had been, and that he would have been entitled to have called the legal representative of James H. Shorter to

an account for the estate of Eli S. Shorter, in his hands, according to the provisions of the Act of 1845, would that circumstance *necessarily* defeat the right of the *distributees*, who are now suing, to call for an account under the provisions of the Act of 1836 ? Because the administrator *de bonis non* may, under the Act of 1845, call the representative of the deceased administrator to account, does it necessarily follow that the legal distributees of the estate *may not ?* We are not yet prepared so to hold, especially on the state of facts disclosed by the record in this case.

[5.] The complainants, by their bill seek to surcharge and falsify the accounts rendered by James H. Shorter, as administrator, to the Court of Ordinary. To that portion of the bill the defendant demurs, because the allegations made therein are not sufficiently definite and distinct for that purpose. When a complainant undertakes to surcharge and falsify a stated account, the burden of proof is upon him. (1 *Story's Eq.* §525.) Consequently, the allegations in his bill should be sufficient to admit the evidence. Taking the allegations in the bill *to be true*, in relation to the various items in the administrator's account, which the complainants seek, to impeach and set aside, are the same sufficient in law for that purpose?

In regard to voucher number 7, contained in the returns of James H. Shorter, to the Court of Ordinary, which appears in the record to be as follows : " Cash paid Eli S. Shorter's subscription to open street by H. S. Smith, $500 00:" the allegation in the bill is, " that the said James H. Shorter misapplied the funds and effects of said estate, in this, that he paid, as shewn by voucher No. 7, in the return for the year 1837, five hundred dollars, when there was *no debt due from said estate,* and *no legal evidence of the same furnished by said James H.*" Now if the administrator paid out $500 00, when there was *no debt due,* for which the same was paid, and no legal evidence of the same furnished by him, then the credit for that amount ought not to be allowed ; and the Jury on the trial of the cause, will be authorized so to find, if the complainant shall then prove the allegation, by satisfactory evidence. The existence or *non-existence*

of the debt in question, against the estate of Eli S. Shorter, is an *issuable* fact. The allegations in regard to some of the items, are somewhat vague and uncertain ; but on demurrer, we are unwilling to say that a *prima facie* case is not made out against them, taking what the complainants allege *to be true;* they will, however, be restricted to their allegations on the trial, in the introduction of their evidence.

[6.] There is another reason why we should be very reluctant to sustain this demurrer. Fraud is directly charged by the complainants, in regard to the settlement of this estate, by the administrator. In *Vernon vs. Vawdry,* (2 *Atkyn's Rep.* 119,) it was held, that if there are only mistakes and omissions, in a *stated account,* the party shall be allowed no more than to *surcharge* and *falsify ;* but if it is apparent to the Court, that there has been *fraud* and imposition, the decree must be, that the whole shall be opened, notwithstanding it was a stated account of twenty-three years standing, and the party charged with the fraud, was dead. In *Farnham vs. Brooks,* (9 *Pickering's Rep.* 212,) the Court held, that where a bill in Equity to open an account settled, was filed, if it appeared from the facts alleged and proved, that there was *fraud,* actual or constructive, in the settlement, the plaintiff will be entitled to relief, notwithstanding the bill contains no direct averment of fraud. Let the judgment of the Court below, sustaining the demurrer to the complainant's bill be reversed, on all the grounds taken therein.