PATTERSON *v.* FIDELITY & DEPOSIT CO. *et al.*

No. 10583.     SEPTEMBER 12, 1935.

*Jones, Fuller, Russell & Clapp,* for plaintiff.

*Little, Powell, Reid & Goldstein, James H. Therrell, W. P. Bloodworth,* and *Heyman & Heyman,* for defendants.

BECK, Presiding Justice. Mrs. Lula B. Patterson filed suit against John D. Patterson and Mrs. Birdie Garner as administrators of the estate of Ella J. Patterson, deceased, and J. R.

Garner, asking for the removal of the administrators, for an accounting, and for injunction and other relief. Subsequently the Fidelity and Deposit Company of Maryland, hereinafter called the Fidelity Company, surety on the bond of the administrators, was made a party defendant. This company filed a demurrer to the petition. The demurrer was sustained, and the case was dismissed as to the surety. The plaintiff excepted.

The following allegations were made in the petition: The plaintiff purchased from her husband, John D. Patterson Jr., his undivided one-fifth interest in the estate of his mother, Ella J. Patterson, deceased. John D. Patterson and Mrs. Birdie P. Garner were the administrators of the estate. J. R. Garner is the husband of Mrs. Birdie P. Garner, one of the administrators. The chief asset of the estate was a house and lot on Peachtree Street, Atlanta, Georgia, appraised at $25,000. Mrs. Ella J. Patterson died on December 16, 1928. The real estate was not offered for sale until the spring of 1932. It was subject to a loan of $5500. When Mrs. Patterson died in 1928, there was cash on hand amounting to $3431.99. In 1932, when the real estate was offered for sale, all of the cash had been spent, but none of it had been applied on payment of the mortgage on the real estate. The property was advertised for sale three times 'in 1932: during the month of March, for sale on the first Tuesday in April; the second time, during the month of April, for sale on the first Tuesday in May; and the third time, during the month of May, for sale on the first Tuesday in June. For some reason unknown to petitioner, no sale was had on the first Tuesday in April, 1932. On the first Tuesday in May, 1932, petitioner's husband, John D. Patterson Jr., was present in front of the court-house door at the hour for legal sale, and had with him a responsible party ready, willing, and able to bid on the property the sum of $20,500, and to pay $7000 in cash and give other property of the value of $8000. Without reference to the property which was offered in addition to the cash, the prospective purchaser on the ground ready to bid on the property was ready to pay $7000 cash and assume the loan thereon of $5500. John D. Patterson, one of the administrators, exercising control of the sale, was notified in person by the husband of petitioner that the prospective bidder was on hand ready to

bid. The administrator refused to come to the court-house and cry off the property, and it was not offered for sale in May. On the first Tuesday in June, 1932, the husband of petitioner was present in front of the court-house, awaiting the sale of the property. He stepped into the ordinary's office for a moment to make inquiry about the case; when he left, the administrator had not begun to read the advertisement; but shortly thereafter, when he came out of the ordinary's office, he was informed by J. R. Garner, the husband of Birdie P. Garner, one of the administrators, that J. R. Garner had bought the property for $100. This price for the property was grossly inadequate. The sale was fraudulent by reason of the way it was conducted, and the administrators failed and refused to sell the property at a time when they could have realized not less than $7000 in cash over and above the loan thereon, and they deliberately delayed the sale for the purpose of conducting it later, under circumstances where there would be no competitive bidding, so as to enable the husband of one of the administrators to buy in the property for a nominal sum. Also gross mismanagement and incompetency of the administrators were charged. The prayers were for an order declaring the sale illegal and setting it aside; for removal of the administrators, and for the appointment of a receiver; also for an accounting and judgment, and for an order enjoining J. R. Garner from undertaking to dispose of the property which he is alleged to have bought.

Before the hearing of the demurrer to the petition the $5500 mortgage on the property in question was foreclosed under an order of court, and the net proceeds of the foreclosure sale, after paying off the principal and interest of the loan and all costs, was only $791.72.

■ Under the allegations in the petition no cause of action is shown against the Fidelity and Deposit Company. One of the grounds of complaint is that the administrators did not sell the real estate "promptly" or "at the time provided by law, at the expiration of one year," and did not offer the real estate for sale until June, 1932, when the real-estate market was at the lowest for many years, and that at the time of the sale the property was fraudulently and collusively sold to the husband of one of the administrators, Mrs. Birdie P. Garner, at an inadequate price; and

therefore that the sale was illegal and void. The allegation that the real property of the Patterson estate was not sold promptly or at the expiration of the administration year does not show a breach of the bond of the administrators. There is no requirement of the law that an administrator shall sell the real estate promptly after his qualification, nor does the law require that an administrator sell the real property at the expiration of the year. "Upon the death of the owner of any estate in realty, which estate survives him, the title shall vest immediately in his heirs at law, subject to be administered by the legal representative, if there is one, for the payment of debts and the purposes of distribution. If there is a legal representative, the right to recover such realty shall be in him; if there is none, the heirs may sue in their own names. The title to all other property owned by a decedent shall vest in the administrator of his estate for the benefit of the heirs and creditors." Code of 1933, § 113-901. The real property of the Patterson estate passed directly to the heirs of Mrs. Ella J. Patterson, subject to be administered by the administrators and sold only if a sale became necessary for the payment of debts or for distribution. Section 113-1507 provides that an administrator shall pay the debts of the estate, wholly or in part, at the expiration of the first year from his appointment; but it is not mandatory upon the administrator to pay all debts then, or to sell or distribute all realty then. Section 113-1706 declares: "If at any time it shall become necessary, for the payment of the debts of the estate or for the purposes of distribution, to sell the land of the decedent, the administrator shall, by written petition, apply to the ordinary for leave to sell, setting forth in the petition the reason for such application; and notice of the same shall be published once a week for four weeks before the hearing, in the newspaper in which the county advertisements are published. If no objection is filed, and the ordinary is satisfied of the truth of the allegation in the petition, an order shall be passed granting the leave to sell, specifying therein the land as definitely as possible." Construing together the above quoted sections of the Code, it is apparent that it is not an absolute requirement of the law that an administrator shall sell all of the land of the estate at the expiration of the administration year, and that the land shall be sold only for the payment of debts or distribution. It is in

many cases, under varying circumstances not necessary to enumerate, proper that an administrator hold the land of the intestate for more than one or two years, or perhaps longer, if there be no necessity for sale to satisfy debts of the estate, or if it is not necessary to sell the real property for purposes of distribution to the heirs. It does not appear from the petition that it was at any time necessary to sell the land involved, for the payment of debts, until the same was advertised and sold in June, 1932; nor does it appear that there was a necessity to sell the land for distribution. The delay as alleged in selling the real estate does not show any such breach of duty as would render the Fidelity and Deposit Company liable as surety for failure to sell the land before that time; especially as there is no allegation that any one of the distributees of the estate had insisted, by application to the ordinary or by demand on the administrators, that a sale of the real property be made at any time after the expiration of the year. Any one of the distributees of the estate could have applied to the court of ordinary for a sale of the property and for distribution of the proceeds. In *Hobby* v. *Ford,* 149 *Ga.* 176 (99 S. E. 624), it was said: "And if it were made to appear practicable, the ordinary could order a distribution in kind on the application of the administrator, or any distributee of the estate (Civil Code, §§ 4057 et seq.), provided all the distributees should agree to such a division,—for any one of them would have the right to insist upon a sale of the estate and a distribution of the proceeds." See also *Copelan* v. *Kimbrough,* 149 *Ga.* 683 (102 S. E. 162). In *Finch* v. *DuBignon,* 117 *Ga.* 113 (43 S. E. 423), it was said: "When an administrator applies for leave to sell the land of his intestate, it is essential that he should allege that the sale is necessary for the purpose either of paying debts or making distribution. The ordinary has no authority whatever to grant an administrator leave to sell land, unless it is necessary for one or the other of these purposes." An administrator is not under any duty immediately to sell real property of his intestate after the expiration of the administration year; but before the real property can be sold it must distinctly be shown to the ordinary that it is necessary to sell the land to satisfy one of the conditions above referred to. See *Davie* v. *McDaniel,* 47 *Ga.* 195. Inasmuch as the petition fails to allege any duty on the part of the administrators, imposed by

law, to sell the real property at the expiration of the year, and fails to disclose that any of the heirs or distributees demanded of the administrators that the property be sold, or that they had applied to the court of ordinary for permission to sell, the fact that the property was not sold until June, 1932, more than three years after the death of the intestate, would not be a breach of official duty on the part of the administrators which would render the Fidelity and Deposit Company liable as surety on their bond.

It is alleged in the petition that the administrator's sale, actually made in the circumstances shown in the petition, was illegal and void. Conceding that this is true, the petition does not make a case which would render the surety liable to the plaintiff for a breach of the administrator's bond. If the sale was void and of no effect, parties having such interest in the property as would authorize them to have the sale thereof declared void would be entitled, in proper proceedings, to have the sale set aside and to have the property declared to be a part of the estate of the deceased: for if the sale was illegal and void, no title to the realty passed out of the estate, and the property so sold is still a part of the estate, or could again be made a part of the estate in proper proceedings. So, assuming that there had been a breach of duty, no damage resulted, and there could be no recovery on behalf of the plaintiff against the Fidelity and Deposit Company on the allegations in the petition. If the petitioner had a one-fifth interest in the Patterson estate before the void sale, she still had that interest after the sale, if she wished to assert it. The petition alleged that the sale by the administrators to J. R. Garner, the husband of one of the administrators, was illegal and void, and set forth in detail the basis of this allegation. If the sale is void for any reason—because of an invalid court order, or because of fraud on the part of the administrator, or for other reason, the plaintiff was not injured by the void sale, as the heirs at law would not thereby be divested of their title; and the surety of the administrators would not be liable for the breach of their bond.

The fact that the real property of the Patterson estate had been subsequently lost by a foreclosure does not affect the case as made in the petition. In *Hoyt* v. *Ware*, 156 *Ga.* 98 (118 S. E. 734), it was held that where the realty belonging to an estate was sold by an administrator under an invalid order, title to the property did

not pass from the estate; that it still remained a part thereof. In the petition in that case it was alleged that the order was void, and the court held that the demurrer of the surety on the administrator's bond had to be passed on in the light of that allegation, and that the surety was not liable as such for any loss because of the void sale or any loss of the proceeds, as the order was void; but the title to the property remained in the estate, and the petition therefore stated no cause of action. In *Ellis* v. *Geer*, 36 *Ga. App.* 519 (137 S. E. 290), it was held that where realty belonging to an estate was sold by an administrator under an invalid order, the title to the property did not pass from the estate, but remained a part thereof; and that where an equity of the decedent in a tract of land held under a contract of purchase was privately surrendered by the administrator without an order of court, the transfer would not divest the estate of its equitable title to the land, and the surety on the administrator's bond was not liable for the amount received in consideration of such transfer, or for the real value of the decedent's equity in the loan. In that case the transfer of the property by the administrator without an order of court was invalid, because it was fraudulent; and the court held that, as the transfer was void, the title remained in the heirs of the estate, and the surety on the administrator's bond was not liable for the value of the decedent's equity; and the court repeated the principles laid down in *Hoyt* v. *Ware*, supra.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Bell, J., who dissent.*