25746. HAWES, guardian, *v.* STANDARD ACCIDENT INSURANCE COMPANY *et al.*

DECIDED DECEMBER 4, 1936.

*Randall Evans Jr.,* for plaintiff.

*B. J. Stevens, Bussey & Fulcher,* for defendant.

STEPHENS, J. J. H. Hawes, as guardian of Neal McCord, brought an action against E. H. McCord, a former guardian, and the Standard Accident Insurance Company, the surety on the former guardian's bond, alleging various acts of mismanagement and waste. The defendants demurred generally and specially on numerous grounds. The plaintiff filed two amendments, to which, and to the petition as amended, the defendants demurred and renewed their first demurrers. Some of the special demurrers were sustained, some were overruled, and the court sustained the general demurrers and dismissed the action. The plaintiff excepted and assigned error on these rulings.

■ The original petition, brought against E. H. McCord as former guardian of Neal McCord, and the Standard Accident Insurance Company as surety for the former guardian, alleged that E. H. McCord was appointed guardian of Neal McCord's property on February 2, 1931; that the property at that time was worth from ten to twelve thousand dollars; that McCord, guardian, "so mismanaged and wasted and wrongfully used" the property of the ward that in March, 1935, it consisted only of one insurance policy paying $30 per month, which Neal McCord had already paid for when E. H. McCord was appointed guardian, and about $700 worth of other property; that McCord had been re-

moved from the guardianship in a court proceeding on account of his waste and mismanagement; that the bond sued on was conditioned for the full and faithful discharge of all of McCord's duties as guardian; that during his tenure as guardian, although receiving $30 per month on an insurance policy which Neal McCord had paid for before E. H. McCord had him committed to the asylum, the guardian never did pay more than $3 per month to the ward; that none of the other property or money of Neal McCord was expended on him, but was wasted and used and mismanaged by E. H. McCord; that E. H. McCord had Neal McCord committed to the Georgia State Sanitarium as a scheme to take over the property of Neal McCord, and had himself appointed guardian in order that he might come into possession of the property; and in carrying out said scheme E. H. McCord used practically all of Neal McCord's property and wasted and mismanaged it, so that Neal McCord has practically nothing except the insurance policy; that the plaintiff has been the legally-appointed guardian of Neal McCord since March, 1935; that demand for payment has been made by him of E. H. McCord, who refuses to pay; wherefore the plaintiff prays for judgment against the defendants for $7500. The tenor of the petition is that the former guardian had appropriated to himself practically all of the ward's property. Whether the petition be viewed as an effort to bring the former. guardian to an accounting, or as seeking recovery for a wholesale devastavit, the allegations are sufficient as a foundation for amendment. The allegation that the guardian appropriated all the ward's property plainly negatives, by implication, the theory that he properly accounted for the property received. On the theory of devastavit, no specific act of waste being alleged, the petition was demurrable. *Clark* v. *National Surety Co.*, 180 *Ga.* 151 (178 S. E. 148), affirming *National Surety Co.* v. *Clark*, 48 *Ga. App.* 756 (173 S. E. 210), and cit.; *Jennings* v. *Longino*, 49 *Ga. App.* 494 (176 S. E. 94). But it was amended.

By his first amendment the plaintiff cured some of the defects in the petition, and added a number of particulars with regard to the property received by the former guardian. He insists that the court erred in sustaining demurrers to paragraphs 31, 32, and 33 of the amendment. Paragraph 31 alleged that the former guardian "conspired with B. F. Johnson and one Barksdale" to

sell a certain tract of land, by making an agreement to sell the land to Barksdale at an agreed price (at private sale), and then proceeded to waive the first term of court ·in favor of Johnson, who was a creditor with a lien on the property for $500, for which the guardian was responsible, being the original debtor, and through the conniving of the guardian Johnson was enabled to obtain a quick judgment, and he sold the land early in 1934; that the defendant guardian accompanied Johnson and certain officers of the First National Bank of Thomson to the sale, where he allowed it to be bid off to the bank for the inadequate sum of $750, without trying to make it bring a better price, it being worth $2000 according to the appraisal and sworn statement of the guardian; and he then proceeded to have the bank sell the land to Barksdale for the price previously agreed on, with the understanding that the excess above $1000 (which it would require to pay Johnson's claim for $500 and the bank's claim for $500) would be paid to the guardian individually; and thus, in order to make a profit for himself, he sacrificed the land for $750 and deliberately lost the equity of $1350 which his ward owned in the property. This paragraph of the plaintiff's first amendment was demurred to on several grounds, of which only one need be mentioned, namely that the alleged facts constituted no devastavit by the guardian for which the surety on his bond would be liable. This ground was well taken, because the Supreme Court has held: "Where a sale of realty conducted by an administrator is illegal and void, title to the property sold does not pass, and the heirs and distributees may assert their title to the property so sold, and there is no such loss to the heirs or distributees as would amount to a breach of the bond of the administrator and render the surety thereon liable." *Patterson* v. *Fidelity & Deposit Co.,* 181 *Ga.* 61 (2) (181 S. E. 776). The same principle will apply in a suit on a guardian's bond. In the present case it is true that the sale is not expressly alleged to have been illegal and void; but under the alleged facts, the land having finally been sold to Barksdale at the price previously agreed on between him and the guardian, Barksdale being one of the conspirators to defraud the estate of the ward, there is no difficulty in holding that the plaintiff guardian could recover the land from Barksdale for the benefit of his ward.

Paragraph 32 of the plaintiff's first amendment alleged that

though there was no necessity to sell the land in McDuffie County, the defendant guardian entered into a written agreement with Mr. and Mrs. George T. McCord, providing that he would cause the land to be sold by an alleged creditor, and he would see that Mr. and Mrs. McCord received title to the place through purchase at said sale, and that they would pay the defendant guardian $200 per year for the remainder of his life; that the defendant guardian then proceeded to have the land advertised for sale by an alleged creditor, and had it sold for $2725, as against the appraised value of $4500, to which he had sworn at the time of his qualification as guardian; and thus, in order to help himself individually, he deliberately sacrificed an equity of at least $1775 in the land belonging to the ward. Here there is no distinct allegation of who purchased the land at the sale. For aught that appears, it was bought by the parties to the fraudulent agreement. At any rate, in order to show a devastavit, it was incumbent on the pleader to allege facts which would show that the land was irretrievably lost to the ward's estate. Paragraph 32 was demurred to on the ground that it did not show a devastavit. On the authority of *Patterson* v. *Fidelity & Deposit Co.,* supra, this ground was properly sustained. Paragraph 33 of the first amendment, which alleges the amount lost by the transactions mentioned in paragraphs 31 and 32, goes out along with the latter paragraphs. There was no error in striking these paragraphs.

■ Paragraph 17 of the first amendment alleged that the defendant guardian converted the estate, or a major portion thereof, into money which he placed to his individual credit and a part of which he withdrew on his individual checks. This was stricken on special demurrer. But in paragraph 2 of his second amendment the plaintiff added to paragraph 17 of the first amendment by alleging that the defendant guardian, "during the time that he was acting as guardian for Neal McCord, placed to his individual credit in the Bank of Thomson the sum of $7000, for which he has failed to account, now refuses to account to the plaintiff, though requested so to do, and has never accounted for same during his tenure of office." The special demurrer of the surety to this paragraph was overruled. However, the surety demurred to the amended petition, because it sought to recover for an alleged devastavit, also to recover for an alleged failure to account, and

also to have an accounting, and for these reasons the petition was duplicitous and contained a misjoinder of causes of action. In sustaining this demurrer the judge said: "This court is further of the opinion that plaintiff's original petition does not set out a cause of action against the defendants, because it attempts to recover against E. H. McCord, the former guardian of J. Neal McCord, solely for a devastavit, and the plaintiff having failed to allege sufficient facts to constitute a devastavit, either in his original petition or as amended, can not change his cause of action to one for an accounting against the former guardian, as he seemingly attempts to do by his second amendment to his petition. This seems to be the rule laid down in *Ellison* v. *Georgia Railroad Co.*, 87 *Ga.* 691, 709 (13 S. E. 809). The court is also of the opinion that there is nothing in plaintiff's original petition to authorize an amendment for an accounting. The petition must contain enough to amend by." This opinion is not in accord with the decision in *Williams* v. *Lancaster,* 113 *Ga.* 1020 (39 S. E. 471), in which the court held that in a suit by heirs against an administrator and his sureties, the action could be amended so as to pray for an accounting and settlement with the administrator, that the petition was not multifarious, and that the amendment did not add a new cause of action. In view of this decision it was error for the court to dismiss the amended petition on general demurrer. In fact, on a general survey of the petition and the amendments, it appears that the pleader had the double purpose of suing for acts of waste as well as for an accounting, and according to the decision just cited, this is allowable. According to a headnote decision in *United States Fidelity & Guaranty Co.* v. *Woodyard,* 18 *Ga. App.* 418 (89 S. E. 492), the deposit of the ward's funds to the individual account of the guardian, and failure to account therefor, are per se a breach of the bond. In *Munnerlyn* v. *Augusta Savings Bank,* 88 *Ga.* 333 (14 S. E. 544), it was held that for a trustee to deposit trust funds in bank to his account as "agent" was not a conversion as between him and the bank. In the present case the allegation is different. In *Gatewood* v. *Furlow,* 19 *Ga. App.* 74 (90 S. E. 973), an administrator who deposited funds to an account as "administrator," without designating the estate of which he was administrator, was held to be prima-facie individually liable for the loss of the fund by reason of the

failure of the bank. But there can be no doubt of the liability of a guardian and his surety for funds received, for which the guardian has never accounted. *Freeman* v. *Brewster,* 93 *Ga.* 648 (3) (21 S. E. 165); *United States Fidelity & Guaranty Co.* v. *Davis,* 2 *Ga. App.* 525 (58 S. E. 777).

■ Notice must be taken of certain other allegations in the petition as amended. The allegations as to money from the insurance policy paid to the defendant guardian are contained in paragraph 7 of the original petition, paragraph 16 of the first amendment, and paragraph 5 of the second amendment. The demurrers of the surety to the first two of these paragraphs were overruled, and the third was not demurred to. Hence, the allegations as to the insurance monies were still in the petition when the general demurrer was sustained. Paragraph 24 of the first amendment alleged that the defendant guardian took charge of certain livestock, cotton-seed and corn. This paragraph was demurred to in paragraph 13 of the surety's demurrers to the first amendment, and this demurrer was overruled. Paragraph 25 of the first amendment alleged the receipt by the defendant guardian of 47 bales of cotton ($2506.23) and insurance dividends ($300). This paragraph was demurred to in paragraph 14 of the surety's demurrer to the first amendment, and the demurrer was overruled. Thus it appears that these paragraphs 24 and 25 were still in the petition when the court sustained the general demurrer. Paragraphs 4 and 6 of the second amendment were not demurred to specially, and were still in the petition when the general demurrer was sustained. Paragraph 4 alleged that the defendant guardian received, at the time of his appointment, the same personal property as was stated in paragraphs 24 and 25 of the first amendment. Paragraph 6 gave certain items of property turned over to the plaintiff guardian by the defendant guardian for which the latter, of course, would be entitled to credit.

■ Under the state of the record and the rulings herein made, the general result is that the petition was maintainable as an action for an accounting for the personal property received by the defendant guardian, but not for the lands, the allegations as to the management of the lands not being sufficient to show a devastavit. The judgment is reversed, because the court erred in sustaining the demurrer of the surety to paragraph 17 of the first amendment

as amended in paragraph 2 of the second amendment, and erred in dismissing the action.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*