33285. TUCKER *v.* LEA, guardian.

DECIDED JANUARY 27, 1951.

*Randall Evans Jr.,* for plaintiff in error.
*Langdale, Smith & Tillman, J. Mack Barnes,* contra.

SUTTON, C.J. W. Orrin Lea made application to the Ordinary of Ware County for an order citing his ward, Mrs. Adele Louise Tucker, to appear and be present at a settlement of his account. He alleged that he had been appointed guardian of Mrs. Tucker by the Court of Ordinary of Ware County after she had been adjudged mentally incompetent; that Mrs. Tucker had been adjudged to have been restored to sanity; and that his ward failed to make settlement with her guardian.

To this citation, Mrs. Tucker filed a response alleging devas-

tavits by Lea and W. W. Sharpe, her former guardian, and praying for a judgment for $100,000 against Lea, the successor guardian. The case was not tried in the court of ordinary, but was appealed by consent to the Superior Court of Ware County.

In that court, Lea filed a statement of settlement in which he alleged, in substance, the following: Sharpe had been appointed guardian of Mrs. Tucker in December, 1929, and had acted as such from that time until his death in 1939. Lea was appointed and qualified as successor guardian to Sharpe on October 4, 1939, and Lea took control of all Mrs. Tucker's assets within the jurisdiction of this State of which he had or acquired knowledge. The assets which Lea received consisted of 27 shares of the capital stock of the First National Bank of Waycross; $2352.16 on deposit in the same bank in Sharpe's name as guardian of Mrs. Tucker; and some jewelry, found in Sharpe's safe deposit box at this bank, and now held by Lea and produced in court. The 27 shares of bank stock were sold pursuant to an order of the court of ordinary, and the proceeds were accounted for in Lea's returns approved by the ordinary. The bank deposit of $2352.16 was transferred by the bank to an account in Lea's name as guardian for Mrs. Tucker, and Lea has accounted for this deposit and the income from it in his returns as approved by the court of ordinary. Lea's expenditures of his ward's funds from the date of his appointment until January 17, 1950, have also been accounted for in his returns filed with and approved by the court of ordinary. Since the date when the last return was filed, showing $1106.69 on deposit in said bank, Lea has received no income or other funds for his ward, and has paid $7.85 to the ordinary as costs in connection with the filing and approval of his last annual return. Lea holds, on deposit, $1098.84, subject to the court's disposition. Lea, as guardian of Mrs. Tucker, has received no other income, funds, property or assets other than those reported and shown by his returns, and he has known of no other assets of his ward within the jurisdiction of this State. During Lea's guardianship, his total receipts were $3,486.21, consisting of the bank deposit, $204.63 interest on the deposit, $756 from the sale of the bank stock, and $173.42 from the settlement of "old claim against bank." Lea showed total expenditures of $2387.37 by reference to his returns

for certain years. Lea received $87.21 as compensation for his services and as reimbursements for expenses. He prayed for approval of his final settlement as stated, for direction of the court in disposing of the ward's assets remaining in his hands, and that he be discharged as guardian of Mrs. Tucker.

Upon the call of the case in the superior court, Mrs. Tucker offered an amendment striking her previous response and substituting the amendment in its place. In it she admitted the allegations of the petition for citation filed by Lea. She admitted only Sharpe's prior guardianship as alleged in Lea's statement for settlement. The amended response alleged, in substance, the following matter in addition to those facts admitted as pleaded by Lea: Mrs. Tucker was committed to Milledgeville State Hospital for the Insane in December, 1929, and remained there until June, 1947. At the time of her commitment, she had an estate worth $100,000, consisting principally of holdings of real property in Jacksonville and Duval County, Florida. Lea pretends that this estate has been lost to Mrs. Tucker. Sharpe had a security on his bond, and Lea had a security on his bond. Lea's security has employed counsel in this case to represent Lea and to have his return approved. Mrs. Tucker's money, according to the guardians' returns, was used in paying the premiums on the bonds.

Sharpe paid taxes on Mrs. Tucker's Florida realty in the amount of $2038.26 from 1931 to 1936. In 1937 he allowed her lands, except the filling station and the home place, to be sold for taxes. The taxes averaged $339.71 per year. The realty was so situated and divided into parcels that any piece would have sold for enough to pay all taxes for countless years into the future. There were ample funds of the estate on hand with which to pay these taxes; Sharpe had cash on hand as follows: $2365.91 on January 1, 1936; $2251.06 on January 1, 1937; and $2869.39 on January 1, 1938. When the sale was made, only $500 was due for taxes. Sharpe's returns do not show the names of the purchasers of these lands at the tax sales, nor the amounts paid for the lands, nor any credit to the ward's estate for sums paid in excess of the taxes due. In 1937, after these tax sales, Sharpe procured an order from the court of ordinary to sell her equity of redemption in these lands, which he sold for $100, paying $24 of

this sum to one Hill, and charging it to cost of sale in his returns. Sharpe, on October 16, 1931, represented these lands to the ordinary as being valuable, requiring trips to Jacksonville to look after them to preserve his ward's interest, and he requested $1000 for these unusual services. The ordinary passed a void order awarding this amount to him, although no proper notice was ever given to Mrs. Tucker. Her lands were capable of bringing in substantial sums. When Sharpe was appointed guardian, a filling station in Jacksonville was renting for $185 per month. Sharpe collected $13,638.07 and expended $11,399.96 during his guardianship, and Lea collected $3451.42 and expended $1927.21 during his guardianship, leaving a balance, combining the receipts and expenditures of the two guardians, of $1464.22; therefore, there was no necessity to sell or allow any of her realty to be sold for taxes.

. Sharpe paid E. O. Blalock, as attorney for the guardian, $925 from 1930 to 1936, which expenditures were illegal because the attorney's interests had been opposed to Mrs. Tucker's and he rendered no services to Mrs. Tucker or her property.

Sharpe paid $850 to the Milledgeville State Hospital for the maintenance of Mrs. Tucker, without an order to encroach on the corpus of her estate when said sum did (not) come from the profits of her estate.

Her guardians showed no interest in her welfare, either as to her property or her person. Sharpe visited her one time and Lea never did visit her. Lea did not send her money to buy the luxuries and necessities which persons in such institutions need, and Sharpe sent her $45. Sharpe as guardian charged commissions in the amount of $1379.71, to which he was not entitled because his actions were against the interest of the estate, in allowing the lands to be sold for taxes; in selling the equity of redemption for $100; in paying Blalock attorney fees; in showing no interest in the personal welfare of his ward; in representing the necessity of a charge of $1000 for looking after his ward's interests in Florida; in securing a void order allowing him this amount; and in filing a petition stating that the lands should be sold for taxes because he never did get possession of them. Sharpe could have lawfully charged only 2½% on the amounts received and expended by him, a total of $622.58.

When Lea was appointed as guardian for Mrs. Tucker in October, 1939, he learned of the situation of the estate and of the devastavits of Sharpe, the former guardian. Lea failed to hold Sharpe's estate and the security on his bond responsible for his losses in the following particulars: (1) sale of land for taxes; (2) illegal payments to Blalock; (3) illegal collection of commissions; (4) illegal payments to Milledgeville State Hospital.

Lea paid to the Milledgeville State Hospital $1880 from the corpus of the estate, and not from the profits, with no order of the ordinary allowing such encroachment on the corpus.

Lea failed to collect rentals on the ward's residence in Jacksonville, thereby losing $10,000 to the ward's estate.

When Mrs. Tucker was committed in 1929, she owned a filling station in Jacksonville, on which she owed one Iwanoski about $3300. From 1930 to 1938, Sharpe paid $3009 on principal and interest, reducing the indebtedness to about $1500. This property was worth $25,000 in 1943, when Lea allowed this property to be foreclosed against, sold, and lost to the estate, although he had on hand enough money to retire the debt. This conduct of Lea damaged the ward $23,500.

Lea is not entitled to any commissions because of his failure to protect the estate against Sharpe's defaults by suing Sharpe and his security; his failure to visit his ward; his failure to send his ward money for her comfort and pleasure; and his failure to file regular annual returns.

The trial judge entered the following order after the amendment to Mrs. Tucker's response was offered: "Amendment allowed only as to allegations as to acts of W. Orrin Lea as guardian and ordered filed." Mrs. Tucker excepted to this order.

■ The plaintiff in error argues that while the amendment may have been defective in part, no special demurrer to it was filed. That was not necessary. "Of course pleadings [already filed] cannot be stricken in their entirety when good in part, although otherwise defective. Where, however, an amendment fatally defective in part, although otherwise allowable, is offered, and its allowance is objected to on the ground of such defect, the entire amendment must be rejected. Before matter which is good and allowable by way of amendment, contained in an offered amendment which is partly defective, can be allowed and

engrafted upon the existing pleadings, the offered amendment must first be stripped of the objectionable matter and only that which is good should be tendered." *Central of Ga. Ry. Co.* v. *Jones,* 28 *Ga. App.* 258, 263 (110 S. E. 914). Where part of an amendment is good, and part of it bad, the court on objection to its allowance pointing out the defective parts should reject the whole amendment. *White* v. *Little,* 139 *Ga.* 522 (4) (77 S. E. 646).

Since the bill of exceptions does not show the grounds of the objections made by Lea to the allowance of this amendment, the refusal to allow the amendment was not error if its rejection appears proper for any reason. The presumption is that the trial court rejected it for a proper reason, if there is one. *White* v. *Little,* 139 *Ga.* 522 (2b) (supra); *Sewell* v. *Anderson,* 197 *Ga.* 623 (3) (30 S. E. 2d, 102); *Richardson* v. *Hairried,* 202 *Ga.* 610 (44 S. E. 2d, 237); *Pearce, Young, Angel Co.* v. *Ward,* 72 *Ga. App.* 89 (1) (33 S. E. 2d, 39); *Smith* v. *Maron,* 81 *Ga. App.* 175 (1) (58 S. E. 2d, 546).

"It is a well-settled rule in equity, that one who objects to a stated account must surcharge or falsify, that is, must allege an omission in the account or deny the correctness of some or all of the items rendered. Civil Code, § 3994. [Code, § 37-306.] An account rendered by an administrator or executor to the ordinary is a stated account within the meaning of this rule; and when such an account is attacked in equity, the burden of proof is upon him who surcharges or falsifies, and consequently the allegations in the bill must be sufficient to admit evidence for that purpose at the trial. *Shorter* v. *Hargroves,* 11 *Ga.* 658 (5). Upon a citation before the ordinary for a settlement the court of ordinary has the same jurisdiction over the matters of the account of the executor or administrator as a court of equity would have upon a bill for a settlement; and the rule in equity above referred to has been held applicable to the pleadings upon which the settlement before the ordinary is to be based, it having been distinctly ruled that 'Where an attack is made upon returns which have been examined and allowed by the court of ordinary, it is incumbent upon the party who attacks them to show wherein they are unlawful, and in his pleading he should point out specifically the items of the

returns on which the attack is made, and as to each should disclose the cause or ground of the attack.' *Bonner* v. *Evans*, 89 *Ga.* 659 (1). It is true that in the case just cited the account of the guardian of a lunatic was involved, but the principle is equally applicable to accounts of executors, administrators, and other trustees who are required by law to make returns to the ordinary. . . Before the plaintiff will be allowed to attack the returns, he must allege in his petition that some of the items are incorrect, setting forth the items, as well as the grounds of attack upon them, or he must allege that there has been an item or items omitted from the returns, which should form a part thereof, setting forth specifically what such items are, so that the defendants may be put on notice of the claims made against them." *Tate* v. *Gairdner*, 119 *Ga.* 133, 134-136 (46 S. E. 73).

The chief item alleged to be omitted from the guardian's account in this case was the proceeds which Lea might have obtained from the estate or security of Sharpe, the predecessor guardian, on a settlement of Sharpe's account. It is alleged that Lea knew of Sharpe's misconduct, which is set out in some detail. The part of the amendment alleging this item as an omission in Lea's account was disallowed by the trial judge.

The allegation that Sharpe let some land be sold for taxes and then sold the right to redeem the land does not show a pecuniary loss to the ward's estate. The land thus sold is alleged to be located in Jacksonville and Duval County, Florida, and the ward's home place and filling station do not appear to have been sold for taxes. The amount of land sold is not shown, nor its value, nor any other particulars which might identify it. The estate was alleged to be worth $100,000 when Sharpe was appointed, and to have consisted principally of realty, but there is no allegation as to what portion of this value could be ascribed to the land sold for taxes. Although this land was alleged to be worth more than the $100 obtained from the sale of the right to redeem after the tax sales, and more than the amount due as taxes for countless years into the future, there is nowhere any definite allegation of a loss to the estate of the ward incurred through Sharpe's mismanagement in this respect which would serve the jury as a measure of Mrs. Tucker's claim against Lea. If no loss to the ward's estate is shown, Lea could

not have recovered on Sharpe's bond, or from his estate, for Sharpe's breach of duty. *Patterson* v. *Fidelity & Deposit Co.,* 181 *Ga.* 61 (181 S. E. 776), and *Hawes* v. *Standard Accident Ins. Co.,* 54 *Ga. App.* 776 (189 S. E. 59), are based on this principle.

The allegation of the payments to Milledgeville State Hospital by Sharpe without an order to encroach on the corpus of the ward's estate shows no breach of duty for which Sharpe's estate or bond could be held. It is not alleged from what source the payments were made, except that they were not from profits. This is not an allegation that the payments were made from the corpus of the estate.

These defects, while there may have been others, were sufficient to authorize the trial judge to reject this part of the amendment, attacking Lea's returns for the omission of amounts Lea might have obtained by settlement with Sharpe's estate or by an action on his bond.

■ During the trial of the case, counsel for Mrs. Tucker asked Lea, on cross-examination, whether he had visited his ward during her confinement in the Milledgeville State Hospital and whether he had sent her so much as one penny for her own use during her 7½ years' confinement while Lea acted as her guardian. Objections were made to these questions, and the court stated that he would sustain the objections. Mrs. Tucker's counsel stated that the questions were material to an allegation of the amended response. The court thereupon stated that he would strike such allegations from the amendment to the response and would refuse to allow further questions along this line to the witness on cross-examination. This ruling is assigned as error.

An objection to a plea insufficient in law may be made by motion to strike the plea, but the same result may be accomplished by objection to evidence which is offered in support of the plea. *Walden* v. *Walden,* 124 *Ga.* 145 (52 S. E. 323) ; *Crew* v. *Hutcheson,* 115 *Ga.* 511 (42 S. E. 16). Whether or not Lea visited his ward or sent her spending money is irrelevant to this settlement of accounts. Lea's power over the person of his ward had been removed by the order of the court of ordinary committing Mrs. Tucker to the State Hospital prior to Lea's appointment as her guardian, and his duty then was to care for

the ward's property. The Code, §§ 35-204 and 35-233, does not show a duty of the guardian of an insane person committed to the State Hospital to provide spending money for the ward in addition to the money paid for her support. Nor can we derive from the duty to protect and maintain, Code, § 49-201, a guardian's duty to visit his ward in the State Hospital.

While a permissible expense of a guardian might be the cost of travel to visit his ward, or a disbursement of spending money to an insane ward, all within reason, no decision is now required of these questions. The guardian does not forfeit his commissions by his failure to perform such services, and is not chargeable for such failure in his account. The striking of this irrelevant portion of the amendment and disallowing the evidence objected to was not error.

■ After the introduction of further testimony and documentary evidence by both parties, the court directed a verdict for the guardian, Lea. The ward's motion for a new trial on the general grounds and on the special grounds assigning error on the direction of the verdict was overruled. To this ruling, the ward excepted.

Were there issues of fact which should have been submitted to the jury? "If any clear and palpable mistake had been made in the account as stated, or there had been any omission of items clearly and satisfactorily proved, to the same extent and with the same certainty that courts of equity require in order to correct mistakes, then such mistake or omission could be corrected at law in this State; but in the absence of pleadings to that effect and of clear proof before the auditor of such mistake, or before the jury on exceptions to the auditor's report, the account stated must stand." *Trippe* v. *Wynne*, 76 *Ga.* 200 (2a). See also the quotation from *Tate* v. *Gairdner*, 119 *Ga.* 133, in the first division of this opinion.

The ward charged that Lea failed to collect rentals on the ward's residence in Jacksonville, Florida, thereby losing $10,000 to the ward's estate. But there was no evidence that Lea ever obtained possession of this property, or even knew of it, so as to raise a duty to take possession of it. *Short* v. *Mathis*, 107 *Ga.* 807 (1) (33 S. E. 694).

While there was evidence that Lea knew of the filling station

in Jacksonville, Florida, through his receipt of a foreclosure notice pertaining to the mortgage secured by the property, and through references in Sharpe's returns to the rentals obtained from it, there was neither pleading nor evidence to support a finding of any amount of loss to the ward's estate occasioned by allowing the foreclosure sale to proceed. It was alleged that the filling station was worth $25,000 in 1943. Mrs. Tucker testified that it had this value in 1929, and that it was worth more than that in 1947. However, there was no evidence as to the value of the filling station at the time the foreclosure took place, which may have been in 1943, or as to the amount due upon the mortgage at this time. Although it appeared that the mortgage was made in 1925, for a debt of $4500, and Sharpe's returns and Mrs. Tucker's testimony showed payments of principal and interest in the amount of $4209, there was no evidence as to what part of this amount had been applied to reduce the principal of the mortgage, so as to show the indebtedness at the time the mortgage was foreclosed. The evidence thus did not show that the foreclosure was disadvantageous or that Lea could have done anything more about it than he did, holding an estate of less than $1600 at the time.

We do not consider the duties, if any, of the guardian with respect to the fact that the property of his ward was located in Florida, since there was no evidence which would render the guardian liable for an omission in his account if the property had been in this State.

The ward contends that Lea, her guardian, should have been charged with amounts which he paid to the Milledgeville State Hospital for her support and maintenance. Lea admitted paying $20 per month for this purpose, and he said that he had received an order from the hospital authorities to pay this amount. See Code, § 35-204. Regardless of whether or not some of the corpus of the estate may have been expended for Mrs. Tucker's maintenance, which depends on whether the item listed as "settlement of old claim against bank" in Lea's returns was income or corpus, it was shown that these expenditures had the subsequent approval of the ordinary when the returns were filed. *Cook* v. *Rainey*, 61 *Ga*. 452. There was no evidence that these amounts had been spent for any other purpose.

Since there was no showing of mismanagement resulting in loss to the estate on Lea's part, the issue as to whether Lea's commissions should be reduced or denied in this final settlement was not in question within the rule of *Marshall* v. *Citizens & Southern Nat. Bank*, 54 *Ga. App.* 123 (6) (187 S. E. 240).

The verdict for the guardian being demanded by the evidence, the trial judge did not err in directing the verdict for the guardian, and in overruling the ward's motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*